[No. 8933.   Department Two.   January 4, 1911.]

## The City of Tacoma, *Respondent*, v. F. A. Boutelle, *Appellant*.[1]

Street Railroads—Regulation—Service—Reasonableness. An ordinance providing the frequency of street car service does not change or destroy any specific or implied right granted in the company's franchise merely because it is more specific than the general power therefor which was reserved in the initiating ordinances.

Same—Burden of Proof. The burden of establishing that the regulation of the frequency of street car service was so unreasonable as to be confiscatory is upon those asserting it.

Same—Franchise—Service—Sufficiency. A street railway franchise providing that the city council might require the cars to be run "sufficient round trips each day," must be construed with reference to the convenience of the public and the increase of population.

Same—Service—Determination of Sufficiency—Legislative Question. Where a street railway franchise provides that the city council might require the cars to be run "sufficient round trips each day" the determination of what is sufficient is a legislative question, subject to review by the courts as to the authority for and reasonableness of the act.

Same—Franchise—Construction—Service. A provision in a street railway franchise requiring cars to run two round trips a day is an expression of the minimum service demanded of the then city, and not of an intention to not require more trips when the growth of the city requires it.

Same—Reasonableness. There is nothing inherent in an ordinance requiring a ten and five minute street car service during certain hours which would authorize a court to hold it unreasonable as a matter of law.

Constitutional Law—Impairing Obligation of Contract—Street Railway Franchise. An ordinance providing a reasonable frequency of street car service, does not impair the obligation of a franchise reserving the right to require the cars to make sufficient trips, or of a franchise prescribing a minimum service of two round trips a day.

[1]Reported in 112 Pac. 661.

STREET RAILROADS—FRANCHISES. A city may not, in granting a franchise to a street railway company, divest itself of its governmental police power the exercise of which is necessary for the public welfare or safety.

STREET RAILROADS—REGULATION OF SERVICE—POLICE POWER. Police power to regulate the frequency of street car service is conferred upon a city by Const., art. 11, § 11, providing that a city may enforce police regulations not in conflict with general law, and Rem. & Bal. Code, § 7507, subd. 9, authorizing the city to control its streets and regulate the operation of street railroads, and Id., subd. 36, granting it the right to provide for the punishment of practices dangerous to the public safety and to make necessary regulations for public health, peace and order, and punish persons violating any of the ordinances.

STREET RAILROADS—REGULATION—REASONABLENESS—VALIDITY. An ordinance regulating the frequency of street car service, and providing that every person violating the same shall be fined, is not void or oppressive as applied to a street car superintendent, where it is admitted that he was in charge of the running and operation of the street car system, there being nothing to show that the service required was unreasonable, and the penalty fixed being a fine not exceeding one hundred dollars (RUDKIN, C. J., and CHADWICK, J., dissenting).

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered February 8, 1910, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, convicting the defendant of violating an ordinance regulating the operation of street cars. Affirmed.

*B. S. Grosscup* and *W. C. Morrow*, for appellant. Ordinance No. 3,883 impairs the obligations of the contract and deprives the street railway company of its property without due process of law. *Commercial Elec. Light & Power Co. v. Tacoma*, 17 Wash. 661, 50 Pac. 592; *State ex rel. Grinsfelder v. Spokane St. R. Co.*, 19 Wash. 518, 53 Pac. 719, 67 Am. St. 739, 41 L. R. A. 515; *Troy v. Troy & L. R.*, 49 N. Y. 657; *Minneapolis v. Minneapolis St. R. Co.*, 215 U. S. 417. The passage of Ordinance No. 3,883 was not authorized under the specific provisions of the city charter conferring power over railroads and street railroads. *Tacoma Gas & Elec.*

*Light Co. v. Tacoma*, 14 Wash. 288, 44 Pac. 655; *Ottawa v. Carey*, 108 U. S. 110, 121; *Detroit Citizens' St. R. Co. v. Detroit*, 110 Mich. 384, 68 N. W. 304, 64 Am. St. 350, 35 L. R. A. 859; *Arnott v. Spokane*, 6 Wash. 442, 33 Pac. 1063. Nor can the ordinance be supported as a valid exercise of the police power. Tiedeman, Police Power, § 212; Cooley, Constitutional Limitations (7th ed.), 265, 266; *Judy v. Lashley*, 50 W. Va. 628, 41 S. E. 197, 57 L. R. A. 413; *Excelsior v. Minneapolis & St. P. Sub. R. Co.*, 108 Minn. 409, 122 N. W. 486, 24 L. R. A. (N. S.) 1035; *Townsend v. Circleville*, 78 Ohio St. 122, 84 N. E. 792, 16 L. R. A. (N. S.) 914. The ordinance was also unreasonable. *Town of Oxanna v. Allen*, 90 Ala. 468, 8 South. 79; *Pittsburg etc. R. Co. v. Crown Point*, 146 Ind. 421, 45 N. E. 587, 35 L. R. A. 684; *Townsend v. Circleville, supra.*

*T. L. Stiles, F. R. Baker*, and *F. M. Carnahan*, for respondent.

MORRIS, J.—Appellant, the superintendent in charge of the running and operation of the street car system of the city of Tacoma, belonging to the Tacoma Railway & Power Company, was convicted of a violation of Ordinance No. 3,883 of said city, and prosecutes this appeal.

Said ordinance is as follows:

"An ordinance regulating the operation of certain street cars in the city of Tacoma by the Tacoma Railway & Power Company, and providing a penalty for the violation thereof.

"Whereas, the street railway service rendered by the Tacoma Railway & Power Company over its line from South Ninth street to Union avenue, South Tacoma, along 'C' street, Jefferson avenue, Pacific avenue, Delin street, 'G' street, South 38th street, 'M' street, South Fifty-sixth street, Railroad street and South Fifty-fourth street is inadequate, in that a sufficient number of cars are not operated to accommodate the number of passengers;

"Now, Therefore, be it ordained by the city of Tacoma:

"Section 1. That from and after October 5th, 1909, the Tacoma Railway & Power Company, its managers, servants

and agents, be required to operate at least one passenger street car each way every ten minutes between South Ninth street and Union avenue (South Tacoma), between the hours of 5 : 30 o'clock a. m., and 12 : 30 o'clock a. m., following, and one car each way every five minutes between the hours of 6 o'clock and 8 o'clock a. m., and between the hours of 5 o'clock and 7 : 30 o'clock p. m., over its line along South 'C' street, Jefferson avenue, Pacific avenue, Delin street, 'G' street, South Thirty-eighth street, 'M' street, South Fifty-sixth street, Railroad street and South Fifty-fourth street.

"Section 2. Every person violating the provisions of this ordinance shall, on conviction thereof, be fined in any sum not exceeding one hundred dollars.

"Section 3. Each day's failure of said Tacoma Railway & Power Company to comply with the provisions of this ordinance shall constitute a separate offense."

Appellant urges two grounds of error: (1) The ordinance is unconstitutional, and violates the guaranties of both the state and Federal constitution, in that it seeks to impair the obligations of a contract and to deprive the street railway company of its property without due process of law; and (2) the city was without authority to pass the ordinance, it was not authorized under the specific provisions of the city charter conferring power over street railways, nor can it be sustained as a valid exercise of the police power.

The street railway line referred to in the ordinance, from South Ninth street to Union avenue, South Tacoma, is known as the South Tacoma line, and is operated over portions of ten different streets. The right to operate over these different streets was conferred by three different ordinances, passed at as many different times, and containing different provisions and conditions affecting the franchise therein granted. The tracks on Jefferson avenue, Pacific avenue, and C street are operated under franchise granted by Ordinance No. 152 as amended by Ordinance No. 238. This ordinance was passed in 1887, and § 5, as amended in 1889, provides as follows:

"The city council may regulate the speed for running the

·cars and may require the cars to be run on or over the lines ·of said railways sufficient round trips each day, and no cars shall be allowed at any time to stop and remain upon any intersection of streets for a longer period than three minutes, ·and any violation of the provisions of this section shall subject the owners of said railways to a fine of not less than. five or more than twenty-five dollars for every offense upon conviction thereof before any court having jurisdiction."

The tracks on Delin and G streets are operated under Ordinance No. 188, passed in 1888, § 6 of which is as follows:

"The city council may regulate the speed for running the ·cars and may require cars to be run two round trips each ·day on all completed portions of said railway after one mile thereof is completed. No car shall be allowed at any time to stop or remain upon any street intersection. The fare upon ·said railway over the whole, or any part thereof, shall not ·exceed five cents for each passenger, including ordinary per- ·sonal hand baggage. Any violation of the provisions of this section shall subject the owners of said railway to a fine of not less than five or more than twenty-five dollars for every offense, upon conviction thereof before any court having juris- ·diction."

The franchise for the remaining streets was granted by ·Ordinance No. 860, passed in 1893, § 12 of which is as follows:

"Nothing in this ordinance shall be so construed as to prevent the city council of the city of Tacoma from passing all ·ordinances and resolutions necessary for the protection of the interests of the city, and to carry out the spirit and provisions of this franchise or ordinance, or from granting to any ·other street railway the right to cross the tracks of the line or lines of this railway at the same grade."

Appellant's contention is that Ordinance No 3,883, in providing for a five-minute service over the entire South Tacoma line, is an attempted impairment of the obligation of the contracts between the city and the railway company, as established by the various franchises; that as to the first group of streets, the city is not authorized by the franchise to determine what shall be "sufficient round trips each day," as

provided for in § 5, *supra*; that such clause does not confer upon the council the right to determine arbitrarily the number of round trips each day that will be sufficient; but that the determination of that matter presents a judicial rather than a legislative question; that as to the second group of streets, the provision of § 6, *supra*, investing the city council with power to "require cars to be run two round trips each day," is a manifest expression of intention on the part of the council that it reserved no authority to require a more frequent service than two round trips a day; that the third group of streets controlled by the provisions of § 12, *supra*, have no reservation whatever as to any authority in the council to require any specific degree of service, or to determine what should be a sufficient service, there being no expressed intention in § 12 to reserve any such power; that inasmuch as, in the ordinances governing the first two groups of streets, a specific authority had been declared, the omission of such declaration in the ordinance governing the third group was intentional and deliberate.

The suggestion first advanced in support of these contentions is that a franchise grant to a public service corporation is in the nature of a contract, equally binding upon both the city and the railway company, and that an attempt of the city to abrogate any of the rights conferred by the passage of a subsequent ordinance is an impairment of a contract obligation and hence void. So far as being a correct statement of the law, the above position may be admitted, but in our opinion it has no place in the determination of the question before us.

A good illustration of the correct application of the above rule of law may be found in *Minneapolis v. Minneapolis St. R. Co.*, 215 U. S. 417, cited by appellant as supporting his application of the rule. In 1875 the city of Minneapolis gave a franchise to the railway company for fifty years, by the terms of which the company had the right to charge a fare not exceeding five cents on any continuous line not exceeding

three miles in length.  In 1907 the city council enacted an
ordinance requiring the railway company to sell six tickets
for twenty-five cents, which ordinance was held to be void
as impairing the obligation of a contract.  The right to
charge a five-cent fare was a specific grant of the franchise,
and the city could no more violate such a specific grant than
it could abrogate the franchise itself.  As was said by
Chadwick, J., in *Peterson v. Tacoma R. & Power Co.*,
60 Wash. 406, 111 Pac. 338, in reviewing this same case,
"the right to charge the fare provided in the franchise was
of the essence of the contract, and that it could not be
abridged by the city."  We have confronting us in the pres-
ent case no attempt on the part of the city to change or
destroy by Ordinance No. 3,883 any specific or implied right,
vested in the railway company under any previous ordinances;
but rather an enactment under a general power expressly re-
served in each of the original ordinances.

The fact that the provisions of Ordinance No. 3,883 are
more specific than the expression of the general power re-
served in the initiating ordinances does not destroy the spe-
cific enactment, but leaves for determination the question
whether such specific requirement is reasonable.  If so, it
will be sustained; if not, it will be held invalid.  Elliott,
Railroads, 1624.  And "the question of reasonableness usually
resolves itself into this:  Is the regulation carried to a point
where it becomes prohibition, destruction, or confiscation."
Freund, Police Power, 61.  Reasonableness in this connection
is a question of fact, and will be presumed, the burden of
proof being upon those asserting unreasonableness, of which
there was no evidence in this case.

In *People v. Detroit Citizens' St. R. Co.*, 116 Mich. 132,
74 N. W. 520, an ordinance was passed in 1897, requiring
the railway company to maintain a six-minute service on cer-
tain streets between prescribed hours, under a franchise
granted the railway company in 1862.  It was provided that
cars should be run as often as public convenience required, but

not oftener than once in twenty minutes. Another provision
of the franchise reserved the right to the city to make such
further regulations as may be deemed necessary to protect
the safety, welfare, and accommodation of the public. This
franchise was amended in 1879, extending its life and pro-
viding that cars on all lines subject to the ordinance should
be operated as public convenience required. The railway
company contended, when it was sought to enforce the six-
minute service, as appellant here contends, that the city had
no power to pass such an ordinance, and that the franchise
constituted an inviolable contract, under which they could
only be compelled to run cars every twenty minutes. In
passing upon this contention, the court referred to the fact
that Detroit, in 1862, was a city of about 50,000 people. Its
residents all lived within a comparatively short distance of
the business center, and it was probably believed that the
time fixed for the running of the cars would fully answer the
convenience and demands of the people. It was then held that,
in view of the increased population of the city, with the
consequent demands for a quicker and more convenient street
railway service, together with the provisions of the amend-
ment of 1879, the ordinance was valid, and a reasonable de-
termination of the power vested in the common council.

A like argument might well be used in referring to the
city of Tacoma in 1887 and 1888, the years of the passage
of the first two ordinances, one of which provided that the
city council might require the cars to be run "sufficient round
trips each day," and the other "two round trips each day."
Sufficient for what? Manifestly not for the convenience of
the railway company, but the convenience and demands for
reasonable transportation on the part of the residents of
the city whose inhabitants at that time looked forward to
its becoming a great city before the life of the granted
franchise had expired; and as it increased in population, so
would there be an increased demand for an improved street
railway service, recognized by the city in reserving to itself,

as it did in the first franchise, the right to require "sufficient round trips each day" to accommodate the necessities of its residents and their demands for a proper public service.

Nor is this a question for judicial determination, as contended by appellant, but what would be "sufficient round trips each day" is purely a legislative question to be determined and solved by the common council of the city, subject to a review by the courts upon the question of the authority and reasonableness of its act. So the provisions of the second ordinance, requiring cars to run two round trips a day, is not, as contended for by appellant, the expression of an intention to not require more trips; it is nothing more than an expression of the minimum service regarded by the city as being sufficient for the demands of the then city in the territory covered by the franchise. As to the third provision found in § 12 of Ordinance 860, appellant contends it to be simply a declaration of a reservation of the police power. If it is such a declaration, then such a reservation, if needful, would be ample to invest the city with full power to pass Ordinance No. 3,883, as we shall argue more fully hereafter.

Referring again to the rule of "reasonableness," as determinative of the effect of subsequent requirements upon franchise regulation, a good case may be found in State, Trenton Horse R. Co. v. Trenton, 53 N. J. L. 132, 20 Atl. 1076, 11 L. R. A. 410. The charter of the city of Trenton conferred general power to pass ordinances necessary and proper for the good government, order, and protection of persons and property; also power to prescribe the manner in which corporations should exercise any granted privilege in the use of the streets. Under these grants the city based its right to pass an ordinance requiring horse railways to have an agent, in addition to the driver on each car. The ordinance being attacked for lack of power, the court held that neither of the above enumerated powers added anything to the right of the city to exercise the police power, and the

only question to be considered was the reasonableness of the ordinance, and, if reasonable, no special delegation of power was required to vindicate it; and added:

"In concluding whether the ordinance under consideration is a reasonable precaution in favor of the public safety and order, we must regard it in the light of the following conditions which surround the question: First. A rule of construction to be applied is, that when an ordinance is passed upon a matter clearly within a general power, the presumption is in favor of its reasonableness. The judicial power to declare it void can only be exerted when from the inherent character of the ordinance or from evidence taken showing its operation it is demonstrated to be unreasonable."

See, also, *Mayor etc. of New York v. Dry-Dock E. B. & B. R. Co.*, 133 N. Y. 104, 30 N. E. 563, 28 Am. St. 609; *Van Hook v. Selma*, 70 Ala. 361, 45 Am. Rep. 85; *North Jersey St. R. Co. v. Jersey City*, 75 N. J. L. 349, 67 Atl. 1072.

In the present case there was no attempt to show Ordinance No. 3,883 was unreasonable. Nor is there in its inherent character anything which would move the court to hold it unreasonable as a matter of law, and thus declare it void. We, therefore, hold upon the first point reserved by appellant, that the ordinance in question is not an attempt to impair the obligations of a contract, and therefore void.

Much of the second assignment of error is involved in what has already been said. We will, however, discuss it more in detail. All courts concede the impossibility of adopting fixed rules by which to test the validity of laws passed under the police power. It covers a wide range of subjects, but is especially occupied with whatever affects the peace, security, health, morals, and general welfare of a community. While originally it was used as a rule to indicate the protective function of the government, its development of late years has been in the direction of the function of the state that cares for the general welfare. Social Progress & the Police Power, 36 Am. Law Review, 681. As was said by Chadwick, J., in *Bowes v. Aberdeen*, 58 Wash. 535, 109 Pac. 369:

"Its exercise in proper cases marks the growth and development of the law rather than, as some assert, a tyrannical assertion of governmental powers denied by our written constitution."

In its broadest acceptation it means the general power of the state to preserve and promote the public welfare, even at the expense of private rights. *Karasek v. Peier*, 22 Wash. 419, 61 Pac. 33, 50 L. R. A. 345. That it, when generally reserved, vests ample power in the common council of a city, having in mind the general welfare of the traveling public, and the health and safety of the citizen, endangered by crowded and heavily loaded cars, to determine by ordinance the frequency with which cars should be run upon the public streets, is to our mind demonstrated both upon principle and by authority. In *Detroit v. Detroit Citizens' St. R. Co.*, 184 U. S. 368, the court held that a general reservation in a franchise to make such regulations as may from time to time be deemed necessary to protect the interest, safety, welfare, or accommodation of the city and public, while not sufficient to permit the city to pass an ordinance changing the rate of fare, was ample in regard to all matters incident to the operation of the road such as "in the interest of public travel, the frequency with which cars should be run for the public convenience." Such a reservation is not as broad as that contained in Ordinance No. 152, *supra;* nor it is in effect any broader than the reservations contained in Ordinances Nos. 188 and 860. In *Lawton v. Steele*, 152 U. S. 133, the court says the police power is universally conceded to include everything essential to the public safety, health and morals, and includes "the regulation of railways and other means of public conveyance." Joyce on Franchises thus states the same rule, in § 387:

"A municipality under its right to make resonable regulations concerning the use of its streets by a street railroad company may limit the speed of its cars, or the length of time of service or of running of cars on certain streets."

We believe it to be equally well settled that it was not within the power of the city, in any franchise it may have conferred upon the railway company, to divest itself of its governmental police power, the exercise of which is necessary for the public welfare and the preservation of the public safety. Elliott, Railroads, § 1082; Joyce, Franchises, § 366; Abbott, Municipal Corporations, § 854; *Beer Co. v. Massachusetts,* 97 U. S. 25, 33; *St. Louis & San Francisco R. Co. v. Mathews,* 165 U. S. 1, 23.

"The power is continuing and no grant that can be made legally can .destroy it. Therefore, the municipal corporation in granting franchises for the use of streets may not divest itself of the authority of control and regulation. It is true, under our constitutional system, that, neither vested rights can be destroyed, nor the obligation of contracts impaired. But public necessity may, legally, limit or control these fundamental rights, only, however, in the reasonable exercise of the sovereign police power. The police power to regulate comprehends all necessary and convenient regulations designed to protect life or limb, or to promote the comfort of the public in the use of the streets and thoroughfares. Not only does such power exist, but the duty to exercise it is imposed as a solemn obligation upon the municipal authorities." McQuillan, Municipal Ordinances, § 473.

See, also, *Petz v. Detroit,* 95 Mich. 169, 54 N. W. 644.

Maintaining, then, that the city of Tacoma had reserved to itself ample police power to pass Ordinance No. 3,883, the next inquiry naturally is, has the city the power to use this reserved power. The general police power conferred upon municipal corporations by the constitution is found in art 11, § 11:

"Any county, city, town, or township, may make and enforce within its limits all such local, police, sanitary, and other regulations are not in conflict with general laws."

The general powers delegated by the state to cities of the first class are enumerated in Rem. & Bal. Code, § 7507, among them:

"9. To authorize or prohibit the locating and construct-

ing of any railroad or street railroad in any street, alley, or public place in such city, and to prescribe the terms and conditions upon which any such railroad or street railroad shall be located or constructed; to provide for the alteration, change of grade, or removal thereof; to regulate the moving and operation of railroad and street railroad trains, cars, and locomotives within the corporate limits of said city; and to provide by ordinance for the protection of all persons and property against injury in the use of such railroads or street railroads."

Under subdivision 36 of the same section, is granted the right to provide for the punishment of all practices dangerous to public safety, and to make regulations necessary for the preservation of public health, peace, and good order; and to provide for the punishment of all persons violating any of the ordinances. These provisions of the constitution and statute would seem to be a sufficient conferring of police power upon the municipality by the state. The charter of Tacoma, passed under these general powers, contains, in § 52, subdivision 9, the assertion of its authority "to regulate the moving and operation of railroad and street railroad trains, cars and locomotives within . the corporate limits, and to provide for the protection of persons and property against injury in the use of such railroads and street railroads." While, under subdivision 36, it asserts its power to pass penal ordinances, in the language of subdivision 36, *supra.* These constitutional, statutory and charter provisions show a sufficient conferring of power upon the municipality by the state, and the assertion on the part of the municipality to use all such power conferred. The police power being ample, then, to sustain Ordinance No. 3,883, and the exercise of this power having been conferred upon the city, and the city having exercised it as conferred, appellant's second objection, that the ordinance is not justified . and cannot be vindicated as a valid exercise of the police power, must also fail.

Appellant, in connection with his second assignment of

error, makes another assertion which we will notice, contending that the ordinance is void because it is oppressive, and arbitrary, in declaring, "every person violating the provisions of this ordinance shall be fined;" and in support of this contention cites *Town of Oxanna v. Allen*, 90 Ala. 468, 8 South. 79; *Townsend v. Circleville*, 78 Ohio St. 122, 84 N. E. 792, 16 L. R. A. (N. S.) 914, and *Ex parte Young*, 209 U. S. 123. A review of those cases will, we think, show they are based upon reasoning which cannot obtain here. In the *Oxanna* case, the superintendent of a street railway company was convicted of a violation of an ordinance providing that it should be unlawful for any street railway company to permit its roadbed or tracks to remain so high above the surface of the street as to discommode and seriously interfere with public travel, and declaring that the president, superintendent, or other officer of such railway company violating the foregoing provision should be fined. Held, that the ordinance was unreasonable and oppressive in so far as it concerned the superintendent, as it made him quasi criminally responsible for the failure of the company to expend money in putting its track in suitable repair; that it was the duty of the company to appropriate money to keep its roadbed in repair. The superintendent had no power to make them, nor could he be expected to use his own money for such purpose. He could not be held responsible for a dereliction of duty on the part of the company. In the case before us, the charge is, failure to maintain a schedule provided for in the ordinance. It was charged in the complaint, admitted in the answer, and the court expressly found, that appellant was "in charge of the running and operation of the street car system of the city of Tacoma;" hence, he was clothed with the power denied the superintendent in the *Oxanna* case, and the reasoning of the court has no application. In fact, it was not attempted to be shown that appellant had no such power. In the *Townsend* case, the ordinance required an interurban railway to stop its cars at all cross streets and

intersections. The conductor of one of the cars was arrested and fined for failing so to stop. Held, no power in the municipality to pass such an ordinance under a power granted "to regulate speed of interurban cars within the corporation," or a second provision providing for the control of the streets. The reasoning of the court is best given in its own language:

"The street railway is what its name signifies, a railway on a street to facilitate its use as a way for persons to pass from one point to another in the city, or through the city; but with the advent of electricity as a motive power the street railway was extended to the suburbs, and as a result of development in its use it has been found practicable to operate cars for long distances, so that now we have the interurban railway, extending from city to city, over the streets and upon or along the highways. . . . If every city and village through which such a railway passes may require its cars to be stopped at every street intersection to take on or to discharge passengers, and to serve the purposes of a street railway, then its usefulness as a means of interurban transportation may be very much limited, because so much time will be consumed in passing through cities and villages that it will no longer be practicable for many to travel that way. Councils may reasonably be expected to be actuated by considerations of local convenience rather than those of the public and in view of the importance of the subject, and its comparatively recent origin, it would seem to be a matter for consideration by the legislature, and it is in view of these considerations that we reach the conclusion that the power has not been conferred by the general terms of section 28."

From the above reasoning it is apparent that the decision on this branch of the case is based upon the character of the railway—an interurban, as distinguished from a local street railway—and the holding of unreasonableness is due to the impracticability of stopping the cars of such a railway at every street crossing in every city. Such reasoning is of no value here. In the *Young* case, the state of Minnesota passed an act fixing two cents a mile as the maximum passenger rate in that state. The act further declared that "any railroad company or any officer, agent, or representa-

tive thereof, who shall violate any provision of this act, shall be guilty of a felony, and upon conviction thereof, shall be punished by a fine not exceeding $5,000, or by imprisonment in the state prison for a period not exceeding five years, or both such fine and imprisonment." It was held that imposing such enormous fines and possible imprisonment rendered the statute unconstitutional on its face, irrespective of the insufficiency of the rates, as persons affected by the law were, because of the enormous penalties for disobedience, prevented from so doing and resorting to the courts to test the validity of the statute, and thereby denied the equal protection of the law. The penalty fixed by the ordinance under review is a fine not exceeding $100. It does not seem to us, therefore, that the reasoning of the courts, nor the grounds upon which the decision in each of these three cases is made, renders them authoritative upon the question before us.

We, therefore, conclude that the judgment of the court below was right upon the law, and the same is affirmed.

CROW and DUNBAR, JJ., concur.

RUDKIN, C. J., and CHADWICK, J. (dissenting)—Before an officer of a street railway company can be held liable criminally for the violation of an ordinance requiring the company to make repairs, maintain schedules, etc., it must affirmatively appear that the company has supplied him with both the means and the authority to comply with the requirements of the local law, otherwise the ordinance is manifestly unreasonable and oppressive. *Town of Oxanna v. Allen*, 90 Ala. 468, 8 South. 79.

We think both the complaint and findings in the case at bar are deficient in this respect, and therefore dissent.