[No. 14209. *En Banc.* April 29, 1918.]

## THE STATE OF WASHINGTON, *Appellant*, v. POSTAL TELEGRAPH-CABLE COMPANY, *Respondent*.[1]

MASTER AND SERVANT — WORKMEN'S COMPENSATION ACT — EXTRA HAZARDOUS EMPLOYMENTS—LEGISLATIVE DEFINITION. The legislature having, in Rem. Code, § 6604-3, of the industrial insurance act, defined the work of construction of telegraph and telephone plants as extra hazardous, the same is conclusive of the fact, especially since judicial notice cannot be taken to the contrary.

SAME. The legislature has the power to classify an occupation as extra hazardous unless the courts may take judicial notice that it is not hazardous.

PLEADING—DENIAL OF LEGISLATIVE DECLARATION. In an action to collect industrial insurance premiums, a denial that an occupation is extra hazardous is of no effect where it is a denial of the legislative declaration (Rem. Code, § 6604-3) that telegraph construction work is extra hazardous.

COMMERCE — WORKMEN'S COMPENSATION — INTERSTATE COMMERCE. Employees engaged in the original construction of telegraph lines are not engaged in interstate commerce, even though it be conceded that the telegraph company is engaged in interstate commerce.

[1]Reported in 172 Pac. 902.

MASTER AND SERVANT—WORKMEN'S COMPENSATION—EXACTION OF PREMIUMS—VALIDITY—"TAX." It does not follow from the fact that a telegraph company is an agent of the United States through its acceptance of the provisions of act of Congress, July 24, 1866 (U. S. Rev. Stat., §§ 5263-5269), and the building of post roads, that the industrial insurance provisions for the compensation of employees in the construction of the system within this state is either a tax upon or an attempt to regulate the business of the company; since it could not have been intended that such companies owed no obedience to state laws; and since the imposition is part of the cost of construction and not a tax upon the industry nor in the nature of a license tax.

CONSTITUTIONAL LAW — OBLIGATION OF CONTRACT — MASTER AND SERVANT—INDUSTRIAL INSURANCE. The industrial insurance act being valid as an exercise of the police power, it is not unconstitutional as impairing the obligation of preexisting contracts for the compensation of injured workmen.

MASTER AND SERVANT — WORKMEN'S COMPENSATION — INTERSTATE COMMERCE—TELEGRAPH OPERATORS—STATUTES. The industrial insurance act for the compensation of workmen injured in extra hazardous employments does not apply to employees engaged in operating the system and handling interstate messages of a telegraph company, where a large per cent of the business of the company is interstate business and it is impossible to segregate or separate the time of employees engaged in interstate from those engaged in intrastate business; in view of § 6604-18 of the act, providing that the act in such a case, applies only to such persons to the extent that their mutual connection with intrastate work is clearly separable and distinguishable from interstate or foreign commerce.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered November 25, 1916, in favor of the defendant, dismissing on the pleadings an action to recover premiums due under the provisions of the industrial insurance act. Reversed in part, and affirmed in part.

*The Attorney General (John H. Dunbar, of counsel), for appellant.*

*O. L. Willett (W. W. Cook, of counsel), for respondent.*

MOUNT, J.—This action was brought to recover premiums alleged to be due on the pay-roll of the workmen of the respondent company, under the provisions of ch. 74, Laws of 1911, p. 345 (Rem. Code, § 6604-1 *et seq.*), commonly known as the industrial insurance act.

The complaint alleged in substance, that the respondent was engaged in the business of constructing telegraph systems within the state during the years 1911 and 1912, and that premiums upon the pay-roll of the workmen employed by the respondent in such construction amounted to $288.57; that respondent was also engaged in operating telegraph systems within the state, and that the premiums upon the pay-roll of workmen employed in such operation amounted to the sum of $261.66; and that these amounts were payable under the provisions of the industrial insurance law. The appellant prayed for judgment in the sum of $550.23. An answer was filed which denied that the respondent was engaged in hazardous or extra hazardous work. The answer set forth several affirmative defenses, which alleged, in substance:

First, that the respondent is doing both an intrastate and interstate business in receiving and transmitting messages, that it is impossible to segregate the time of its employees between local and interstate business, and that the claim of the state thereby results in an illegal burden and tax upon interstate commerce.

Second, that the respondent has accepted the provisions of the act of Congress of July 24, 1866 (U. S. Rev. Stat., §§ 5263-5269 [U. S. Comp. St. 1916, §§ 10072-10079], commonly known as the Post Roads act, and, pursuant thereto, has constructed and maintains lines of telegraph through and over portions of the public domain of the United States, over and along military and post roads of the United States, and over, under and across navigable streams and waters

of the United States, and that, by reason of such accept-
ance, it is an agent of the United States.

Third, that the industrial insurance act, as applied
to the respondent, is an unauthorized and unconstitu-
tional interference with the power of Congress to
establish post roads, to raise and support armies, etc.

Fourth, that the act violates the fourteenth amend-
ment of the constitution of the United States, provid-
ing that no state shall deprive any person of life,
liberty, or property, without due process of law, and
that no state shall deny any person within its juris-
diction the equal protection of the laws.

Fifth, that the act violates the fifth amendment of the
constitution of the United States, providing that pri-
vate property shall not be taken for public use without
just compensation.

Sixth, that the act violates § 3 of article 1 of the con-
stitution of the state of Washington, providing that no
person shall be deprived of property without due pro-
cess of law.

Seventh, that the act violates § 16 of article 1 of the
state constitution, providing that property shall not be
taken for private use nor for public use without just
compensation.

Eighth, that the respondent and many of its em-
ployees had made provision for benefits in case of dis-
ability, by an agreement entered into prior to the pass-
age of the industrial insurance act, and that the act
unnecessarily interferes with, and attempts to destroy,
interests vested under such contractual arrangements.

After this answer was filed, the appellant moved for
a judgment upon the pleadings. The respondent also
moved for judgment upon the pleadings. The trial
court, after hearing these motions, directed judgment
for the respondent. Thereafter, the state filed a reply,
denying some of the affirmative matters set forth in the

amended answer. The court then entered a judgment, dismissing the action. From this judgment of dismissal, the state has appealed.

From this statement of the case it will be noticed that the allegations of the complaint are all admitted, except the answer denies that the workmen employed by the respondent were engaged in hazardous or extra hazardous employment. It is admitted, therefore, as alleged in the complaint, that the respondent was engaged in constructing and operating telegraph lines within the state during the time alleged. It is admitted that the premiums due under the industrial insurance act were the amount stated in the complaint, namely, $288.57 for employees engaged in construction work, and $261.66 for employees engaged in the work of operating telegraph systems, in case these employments were extra hazardous.

The legislature, in the act mentioned, at page 346, § 2, Laws of 1911 (Rem. Code, § 6604-2), provides:

"There is a hazard in all employment, but certain employments have come to be, and to be recognized as being inherently constantly dangerous. This act is intended to apply to all such inherently hazardous works and occupations, and it is the purpose to embrace all of them, which are within the legislative jurisdiction of the state, in the following enumeration, and they are intended to be embraced within the term 'extra hazardous' wherever used in this act, to wit:"

Then, after naming a number of employments, the act designates: "engineering works; . . . telegraph . . . lines, . . ." And then, in the next section (Rem. Code, § 6604-3), engineering work is defined to mean: "any work of construction, . . . of . . . telegraph and telephone plants and lines; . . ."

So that the legislature has defined the work of constructing telegraph lines as "extra hazardous."

In the case of *State v. Powles & Co.*, 94 Wash. 416, 162 Pac. 569, we said, at page 420:

"The legislature, no doubt, has the power to determine directly, by its own enactment, what occupations are extra hazardous, as it has done by the specific enumeration in § 2 of the act."

The legislature having defined the construction of telegraph lines as extra hazardous is conclusive of the fact, especially where judicial notice cannot be taken to the contrary. It seems certain we cannot take notice that the erection of telegraph poles and the stringing of wires thereon is not hazardous or extra hazardous. In view of the fact that the legislature has determined this class of work to be extra hazardous, it follows that an answer which admits the respondent has been engaged in constructing telegraph lines must necessarily admit that such work is extra hazardous, for respondent cannot be heard to dispute a legislative declaration.

In the case of *Mountain Timber Co. v. Washington*, 243 U. S. 219, Ann Cas. 1917D 42, the supreme court of the United States, in passing upon many constitutional questions therein raised, referred to the classification of extra hazardous occupations in this act and said, at page 242:

"We may conveniently answer at this point the objection that the act goes too far in classifying as hazardous large numbers of occupations that are not in their nature hazardous. It might be sufficient to say that this is no concern of plaintiff in error, since it is not contended that its businesses of logging timber, operating a logging railroad, and operating a sawmill with power-driven machinery, or either of them, are non-hazardous. *Plymouth Coal Co. v. Pennsylvania*, 232 U. S. 531, 544. But further, the question whether any of the industries enumerated in § 4 are non-hazardous will be proved by experience, and the provi-

sions of the act themselves give sufficient assurance that if in any industry there be no accident, there will be no assessment, unless for expenses of administration.''

The court, in that case, did not pass directly upon the question whether the occupations named in § 2 could be classified as extra hazardous by the legislature. We are of the opinion that, unless the courts may take notice of the fact that an occupation is not hazardous, it is within the power of the legislature to classify the same as hazardous. The construction of telegraph lines has been declared by the legislature of this state to be an extra hazardous occupation. We are of the opinion, therefore, that the denial of the respondent that it was engaged in an extra hazardous occupation is of no effect, because it is a denial of a legislative declaration. The trial court erred in granting the respondent a judgment upon the pleadings, unless some of the affirmative defenses are sufficient to defeat the action.

The first, second, and third affirmative defenses are to the effect that respondent, during the times mentioned in the complaint, was engaged in interstate commerce as an agent of the government, and that the tax here sought to be collected is an unlawful attempt to regulate interstate commerce by placing a burden upon the business, and that the intrastate business is not clearly separable from the interstate business.

Conceding for the present that the employees engaged in sending and receiving messages and in operating the telegraph system were engaged in interstate commerce, it is plain that the other class of employees engaged in construction work was not engaged in interstate commerce. These employees, according to the complaint, were engaged in original construction of lines of telegraph. The amount of premiums upon the

pay-roll of workmen so employed was, according to the complaint, $288.57.

In the case of *Raymond v. Chicago, M. & St. P. R. Co.*, 243 U. S. 43, where an employee was engaged in shortening the main line of a railway within this state and was injured by an explosion of a charge of dynamite while he was working in a tunnel, it was held that such employee was not engaged in interstate commerce at the time of his injury, and that he was relegated for relief to the workmen's compensation act, above referred to. The court there said, at page 45:

"And this result is controlling even although it be conceded that the railroad company was in a general sense engaged in interstate commerce, since it has been also this day decided that that fact does not prevent the operation of a state workmen's compensation act. *New York Central R. R. Co. v. White*, post, 188 [Ann. Cas. 1917D 629, L. R. A. 1917D 1.]"

For the same reason, it necessarily follows that, even though the telegraph company, the respondent here, is engaged in interstate commerce, its employees engaged in construction work come under the terms of the employers' liability act. *Killes v. Great Northern R. Co.*, 93 Wash. 416, 161 Pac. 69.

Conceding that the telegraph company is an agent of the United States, it does not follow that the provision made for injured employees in the construction of a telegraph system within this state is either a tax or an attempt to regulate the business of the telegraph company. As was said in *Western Union Tel. Co. v. Attorney General of Massachusetts*, 125 U. S. 530, at page 549:

"This authority of the government gives to this telegraph company, as well as to all others of a similar character who accept its provisions, the right to run their lines over the roads and bridges which have been declared to be post-roads of the United States. If the

principle now contended for be sound every railroad in the country should be exempt from taxation because they have all been declared to be post-roads; and the same reasoning would apply with equal force to every bridge and navigable stream throughout the land. And if they were not exempt from the burden of taxation simply because they were post-roads, they would be so relieved whenever a telegraph company chose to make use of one of these roads or bridges along or over which to run its lines.''

And at page 548 of the same opinion, it was said:

''While the state could not interfere by any specific statute to prevent a corporation from placing its lines along these post-roads, or stop the use of them after they were placed there, nevertheless the company receiving the benefit of the laws of the state for the protection of its property and its rights is liable to be taxed upon its real or personal property as any other person would be. It never could have been intended by the Congress of the United States, in conferring upon a corporation of one state the authority to enter the territory of any other state and erect its poles and lines therein, to establish the proposition that such a company owed no obedience to the laws of the state into which it thus entered, and was under no obligation to pay its fair proportion of the taxes necessary to its support.''

The same is true in this case. It never could have been the intention of Congress that a company constructing a telegraph line in this state owed no obedience to the laws of the state which it has entered. This industrial insurance law was enacted primarily for the purpose of protecting injured employees engaged in occupations declared to be hazardous. It is for the benefit of the employer as well as for the employees. The tax, if it may be called such, is a part of the cost of construction of the lines. It is not a tax upon the industry for the privilege of carrying it on, nor is it in the nature of a license tax.

In so far as the construction of the line is concerned, the employees were clearly not engaged in interstate commerce, and the payment of the so-called tax does not affect the .receipts from interstate commerce any more than the cost of construction affects such receipts.

It is further alleged that the employees of the respondent became members of the Postal Telegraph Employees' Association, and that there was a contract and agreement between the respondent and its employees by which the respondent agreed to pay its employees for any incapacity happening during the time of their employment, at a rate as set forth in the complaint; that the majority of the employees who worked during the years 1911 and 1912 entered the employment of the respondent before the passage· of the workmen's compensation act; that the said act illegally interferes with the rights of the respondent and attempts to destroy vested interests under the contract. The answer to this contention is found in *State ex rel. Pratt v. Seattle,* 73 Wash. 396, 132 Pac. 45, where we said, at page 402:

"A more precise statement of the contention is that it violates the obligations of such contracts. But we cannot agree with this contention. The workmen's compensation act, under which these premiums are ·sought to be collected is a police regulation, and is a valid exercise of the police power of the state. *State ex rel. Davis-Smith Co. v. Clausen,* 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466. 'All contracts are subject to this power, the exercise of which is neither abridged nor delayed by reason of existing contracts.' *Seattle v. Hurst,* 50 Wash. 424, 97 Pac. 454, 18 L. R.·A. (N. S.) 169. 'In its broadest acceptation it means the general power of the state to preserve and promote the public welfare even at the expense of private rights.' *Tacoma v. Boutelle,* 61 Wash. 434, 112 Pac. 661. 'The strength of the police power lies in the fact

that it is not a subject of contract; that it cannot be bartered or bargained away.' *State ex rel. Webster v. Superior Court,* 67 Wash. 37, 120 Pac. 861. 'That the exercise of such power may be hampered or restricted to any extent by contracts previously- made between individuals or corporations, is inconceivable.' *Cowley v. Northern Pac. R. Co.,* 68 Wash. 558, 123 Pac. 998, 41 L. R. A. (N. S.) 559. The foregoing principles make it clear that it is within the power of the state to enact and enforce police regulations, even though to do so may render less valuable certain contracts between individuals and totally abrogate others. If the principle were not sound, the result would be that individuals and corporations could, by private contract between themselves, in anticipation of legislation, render of no avail the police regulations of the state, no matter how vital or necessary such regulations might prove to be for the public good. But the reasoning upon which the principle rests is fully stated in the cases above cited, and it is not necessary to enlarge upon it here. It is sufficient to say that the contracts between the city and the interveners is not unlawfully affected by the act of the legislature here in question.''

We are of the opinion, therefore, that, as to the employees of the respondent engaged in construction work, the state was entitled to a judgment for the amount alleged in the complaint. As to the employees engaged in the operation of the lines of the respondent, we are of the opinion that the act does not apply to them, under the allegations of the answer to the effect that the respondent is engaged in interstate commerce; that such employees are engaged in operating the system for handling interstate messages; that a large percentage of the business actually done for the years mentioned in the complaint consisted in interstate messages; and that it is impossible to segregate or separate the time when the employees were engaged in interstate commerce from the time that they were engaged in intrastate commerce. Section 18 of the act

under consideration (chapter 74, Laws of 1911, page 367; Rem. Code, § 6604-18), provides as follows:

"The provisions of this act shall apply to employers and workmen engaged in intrastate and also in interstate or foreign commerce, for whom a rule of liability or method of compensation has been or may be established by the congress of the United States, only to the extent that their mutual connection with intrastate work may and shall be clearly separable and distinguishable from interstate or foreign commerce, . . ."

The employees who are engaged in operating the telegraph lines and in handling interstate and intrastate messages are, no doubt, engaged in interstate commerce. It is clear that the Congress of the United States may establish a rule of liability and a method of compensation for such employees. This act, therefore, by its terms, applies to such persons only to the extent of their mutual connection with intrastate work, which shall be clearly separable and distinguishable from interstate or foreign commerce. Under the allegation of the answer, this work is not clearly separable and distinguishable as to those employees. If this is true, the act does not apply.

All the constitutional questions raised by the answer have been decided by this court and by the supreme court of the United States in *State ex rel. Davis-Smith Co. v. Clausen*, 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466; *State v. Mountain Timber Co.*, 75 Wash. 581, 135 Pac. 645, L. R. A. 1917D 10, and *Mountain Timber Co. v. Washington*, 243 U. S. 219, Ann. Cas. 1917D 642, and it is therefore unnecessary to again enter into a discussion of those questions.

For the reasons hereinabove stated, the judgment of dismissal is reversed, and the cause is remanded with instructions to enter a judgment in favor of the appellant for the compensation due for employees who

were engaged in the construction of telegraph lines, and to permit a reply to the answer of the respondent alleging in substance that the time of the employees engaged in intrastate work is not clearly separable from the time of those engaged in interstate commerce.

ELLIS, C. J., PARKER, FULLERTON, MAIN, and HOL-COMB, JJ., concur.