[No. 16720.   *En Banc.*   March 17, 1922.]

Mike R. Plastino, *Respondent*, v. The City of Seattle, *Appellant*.[1]

Street Railways (20, 29)—Contributory Negligence—Drivers of Vehicles—Question for Jury. Whether the driver of an automobile, struck by a street car at an intersection, was guilty of contributory negligence in not seeing the approaching street car, of which he had an unobstructed view while waiting for another street car to pass, is a question for the jury, where the street car, without any signal or warning, was approaching at such an excessive speed that there is room for an honest difference of opinion as to whether a reasonably prudent man would have concluded that there was no approaching car near enough to hit him before he crossed the tracks.

Same (34)—Instructions—Contributory Negligence. An instruction as to the duty of an automobile driver in crossing street car tracks is not erroneous or misleading in stating that failure to look and listen is not necessarily contributory negligence.

Election of Remedies (5)—Validity and Finality—Ineffectiveness of Remedy. The filing of a claim for compensation under the workmen's compensation act cannot be said to be an election of remedies, precluding a telephone operator, struck by a city street car while crossing the track, from suing the city for his injuries, where there was no showing that he had received or was entitled to compensation, or that the telephone company was subject to the act.

New Trial (11)—Grounds—Argument of Counsel. In an action against a city for personal injuries sustained in a collision with a city street car, it is not an abuse of discretion to refuse a new trial on the ground of improper argument to the effect that the city general fund would not be liable for any recovery by plaintiff, where the city did not ask for any instruction to the jury to disregard the remarks, and the court made it clear that parties suggested as liable were not interested in the case.

Mackintosh, Bridges, and Hovey, JJ., dissent.

Appeal from a judgment of the superior court for King county, Tallman, J., entered April 2, 1921, upon the verdict of a jury rendered in favor of the plaintiff,

[1] Reported in 205 Pac. 404.

in an action for personal injuries sustained in a collision between an automobile and a street car. Affirmed.

*Walter F. Meier* and *Frank S. Griffith,* for appellant.

*Walter S. Fulton* and *Tucker & Hyland,* for respondent.

PARKER, C. J.—The plaintiff, Plastino, commenced this action in the superior court for King county, seeking recovery from the defendant city of damages which he claims to have suffered as the result of the negligent operation of one of the city's street cars. A trial upon the merits resulted in a verdict awarding to Plastino recovery in the sum of $7,000. The city, by appropriate motions timely made during and following the trial, challenged the sufficiency of the evidence to entitle Plastino to any recovery, and also moved in the alternative for a new trial. The trial court denied the city's motions challenging the sufficiency of the evidence to entitle Plastino to any recovery; and also denied the city's motion for a new trial, upon condition that Plastino consent to a reduction of the award to $6,400. He having elected to take an award so reduced, rather than suffer a new trial, judgment was rendered accordingly; from which the city has appealed to this court.

The first and principal contention here made in behalf of the city is that the trial court erred in overruling its motions for an instructed verdict and for judgment notwithstanding the verdict; that is, that the trial court erred in its refusal to decide, as a matter of law, that Plastino was not entitled to any recovery. The argument of counsel for the city upon this branch of the case is addressed almost wholly to the question of contributory negligence on the part of

Plastino. He was injured by one of the city's street cars coming into collision with an automobile he was driving, while crossing the intersection of Twenty-fourth avenue northwest and west Sixty-first street, in the city of Seattle. These streets cross at right angles; Sixty-first street runs east and west; Twenty-fourth avenue runs north and south and has two street car tracks upon it. The north-bound cars run upon the east track, and the south-bound cars upon the west track. Twenty-fourth avenue is paved to the width of sixty feet between the curbs of the sidewalks.

At the hour of about two o'clock in the afternoon of the day of the accident, Plastino drove west along Sixty-first street, approaching Twenty-fourth avenue. When he arrived at about the east line of the pavement of Twenty-fourth avenue, he stopped to await the passing of a north-bound street car upon the east track, which car was about to cross Sixty-first street. He waited there for a moment until he considered that the street car had proceeded a sufficient distance across the intersection so that he could proceed, when he started on west along Sixty-first street, passing immediately behind and within a few feet of the north-bound street car. When he arrived upon the west track, his automobile was struck broadside by a rapidly moving south-bound street car upon the west track, causing his injury. The jury might well have believed that the speed of the south-bound street car was thirty miles, or more, per hour, the lawful speed being not to exceed twenty miles per hour. The impact was so violent and the speed of the street car so great, that Plastino and his automobile were carried along upon the front end of the street car a distance estimated by different witnesses at from 125 to 160 feet.

Just as Plastino was starting his machine to cross the pavement and street car tracks behind the north-bound street car, he looked north to see if there were any cars approaching from that direction upon the west track and did not see any, according to his testimony. It is, it must be conceded, somewhat difficult to arrive at the conclusion that he did not see any car approaching from that direction; since his view was unobstructed for a long distance to the north past beyond the north-bound street car, and the fast-moving south-bound street car was then approaching from the north upon the west track about a block away; but we think the jury might well have believed from the evidence that Plastino did not become conscious of the approach of any street car from the north upon the west-bound track within any such distance as would lead a reasonably prudent person to believe that any car approaching from that direction would reach his line of travel in crossing the west track before he would arrive upon the west track; that is, we think there is room for honest difference of opinion as to whether or not Plastino was warranted in then assuming that no car would reach his line of travel upon the west track from the north and come into collision with his automobile, should he proceed on his way. It is not so much a mere question of Plastino's seeing the south-bound car at a more or less comparatively long distance to the north; but it is a question of his using reasonable caution to look and determine whether or not any street car was approaching from the north within such a distance as to make it dangerous for him to proceed across the west track. While the testimony of the witnesses is in conflict as to whether the motorman on the south-bound car timely rang his bell on approaching Sixty-first street, we think the jury were warranted in be-

lieving that no such signal was timely given. Our recent decisions in *Coons v. Olympia Light & Power Co.,* 111 Wash. 677, 191 Pac. 769; *Johnson v. Seattle,* 113 Wash. 487, 194 Pac. 417; *Nabours v. Seattle,* 113 Wash. 557, 194 Pac. 800; and *Goldsby v. Seattle,* 115 Wash. 566, 197 Pac. 787, it seems to us are decisive in favor of Plastino upon the question of whether or not he was, as a matter of law, guilty of contributory negligence.

Our decision in *Stueding v. Seattle Elec. Co.,* 71 Wash. 476, 128 Pac. 1058, particularly relied upon by counsel for the city, does seem to furnish some argument in support of a contrary holding. That case involved the care to be exercised by a pedestrian crossing a street intersection over street car tracks. A pedestrian has at least some greater degree of opportunity to protect himself than one driving an automobile, by reason of the fact that he has a somewhat larger degree of control over his movements. We note that the pedestrian injured in that case was passing behind a standing street car in front of an on-coming car on another track; and being only a pedestrian he could have stopped, even after passing behind the first car; and no doubt would have then stopped had he made proper observation of the on-coming car on the other track. This, it would seem, furnishes some ground for distinguishing that case from this. However that may be, we think the later decisions of this court, above cited, are controlling here. We conclude that, in view of the speed of the south-bound car, the want of timely signal of its approach from the north, and what Plastino did under the circumstances, as the jury was warranted in viewing them, it should not be decided, as a matter of law, that the city was free from negligence, or that Plastino was guilty of contributory negligence.

It is contended in the city's behalf that the trial court gave to the jury two instructions which were so conflicting and confusing as to be prejudicial to the rights of the city. For the purpose of informing the jury as to the respective rights and duties of the operator of a street car and the operator of an automobile at a street crossing, under an ordinance of the city, the court gave its 14th instruction as follows:

"I instruct you as a matter of law that it is the duty of the driver of a vehicle to be constantly on the lookout to avoid being hit by street cars; that is, it is the duty of the driver to keep out of the way of the street car, and if you find from the evidence in this case that the plaintiff was not paying heed or was not giving the right of way, or that he was violating any of the provisions of the ordinance to which I called your attention, then he would be guilty of negligence."

This was followed by the court's 15th instruction, reading as follows:

"But the failure to look and listen at a street crossing before crossing the street does not constitute negligence as a matter of law."

At first thought it seems a little difficult to harmonize these two instructions; but we think they are not so inconsistent as to have misled or confused the jury to the prejudice of the city. Indeed, it is a little difficult to see other than that the 14th instruction was somewhat more favorable to the city than it was entitled to; since to give all of its language full force and effect would seem to leave no degree of care imposed upon the operator of a street car. The 15th instruction, we think, is the settled law in the light of our repeated holdings. We must remember that this was a collision between a street car and an automobile, and not between an ordinary railroad train and an automobile. More than that, it occurred within a street intersection,

where, manifestly, the degree of care to be exercised by the respective operators of the street car and the automobile was substantially equally reciprocal, though the street car may have had the right of way. We think the law of the situation here in question is well stated by Judge Fullerton in the late case of *Johnson v. Seattle,* 113 Wash. 487, 194 Pac. 417, as follows:

"Contrary to the rule applicable to ordinary railroads, we have held that it is not negligence in itself to fail to stop, look and listen before crossing a street car track. This, of course, does not mean that a person so crossing may act blindly, without giving any heed to his own safety; it means simply that the rule is not one of uniform application to such a situation; that a person is not to be charged with negligence from the fact alone that he did not stop, look and listen. If the conditions are such that it would be the duty of an ordinarily prudent person to stop, look and listen before crossing the track, then the person crossing must do so, else be charged with negligence for not so doing. Stated in another way, the omission of the duty is but a fact to be weighed with all other facts and circumstances surrounding the case in determining the question of negligence or contributory negligence."

We think the giving of these two instructions was not error prejudicial to the city's rights in the trial of the case.

Some contention is made that the trial court erred in refusing to give certain instructions requested by counsel for the city to be given. We think it sufficient to say that the instructions so requested to be given were covered in substance by others given by the court, which were fully as favorable to the city's contentions as the ones refused to be given, and that, therefore, no prejudicial error was committed in the refusal complained of.

The city pleaded as an affirmative defense, in substance, that Plastino, when he was injured, was then

acting in the course of his employment as a lineman of
the Pacific Telephone & Telegraph Company, and that
he had, previous to the commencement of this action,
filed a claim with the industrial insurance commission,
claiming compensation against the industrial insurance
fund for such injury. This was admitted in Plastino's
answer, in so far as his being so employed and the mere
filing of his claim with the industrial insurance com-
mission are concerned. There is nothing else in the
record touching this question, other than his testimony
showing that he was at the time on his way to discon-
nect a telephone; and, of course, the fact that he was
injured by the city, a third party, while away from the
plant of his employer. It is contended and briefly ar-
gued, in behalf of the city, that this action on the part
of Plastino was an election by him to take under the
industrial insurance act, such as to preclude him from
recovering in this common law action. The trouble
with our dealing with this question is that the record
before us is not such as to enable us to determine
whether or not Plastino had any right of election such
as it is claimed he made by the filing of his claim with
the industrial insurance commission. There is noth-
ing in the record to show that he ever followed up his
claim against the insurance fund, or that his claim was
ever considered or allowed by the industrial insurance
commission; nor is there anything in the record lend-
ing support to the city's contention, upon this affirma-
tive defense, that Plastino's employer was under the
industrial insurance law of this state as to compensa-
tion to its injured employees. It may be said that
Plastino's employer was engaged in both intrastate
and interstate commerce to such an extent that it was
not possible to render "clearly separable and distin-
guishable" its pay roll of workmen engaged in each of

such classes of work. This would exempt his employer from the operation of our industrial insurance law, and make his only available remedy a common law action against the city, such as we have here. Laws of 1919, ch. 67, p. 136, § 3 (Rem. Comp. Stat., § 7695); *State v. Postal Telegraph-Cable Co.*, 101 Wash. 630, 172 Pac. 902. This record does not enable us to decide that there was any remedy available to Plastino other than by this action; hence he made no binding election when he filed his claim with the commission.

It is contended in behalf of the city that Mr. Tucker, of counsel for Plastino, while making his argument before the jury, was guilty of misconduct in the use of certain language to the prejudice of the city. All that we have in the record touching this contention is the following:

"Mr. Tucker: . . . Counsel knows that any judgment that is rendered will not be paid out of the city treasury, but will be paid out of the Stone & Webster bonds. Mr. Griffith: If the court please, I think counsel is just a little out of propriety when he talks about that. That is improper conduct and improper argument. The Court: What was his remark? Mr. Griffith: His remarks were something about the bonds of Stone & Webster. It is rather stretching the argument a little. The Court: Well, I guess Stone & Webster are not interested in this matter now, Mr. Tucker. Mr. Tucker: Well, the only thing I wanted to say—I don't think I was in error about it, but anyway whatever judgment we get is payable out of the public utilities. Counsel will not contend that if we get a judgment it is payable out of the general fund—"

It must be conceded that some impropriety on the part of Mr. Tucker is suggested by this quoted portion of the record. We are convinced, however, that his conduct was not of such a prejudicial nature against the city as to call for a new trial of this case. In the

first place, the record does not disclose to us what was, or could have been, meant by Mr. Tucker by the use of the term ''Stone & Webster bonds,'' except possibly that any judgment which might be recovered by Plastino would not be payable out of the general funds of the city—that is, by the taxpayers of the city—but would be payable out of some special fund, apparently the proceeds of the operation of the city's street car system as an independent business. As to whether this was or was not prejudicial to the city, was apparent to the trial court more clearly than it is made to us by this cold record. We note that counsel for the city did not ask any instruction from the court to the jury to disregard the observations of Mr. Tucker. Nevertheless, the court's remark, ''Well, I guess Stone & Webster are not interested in this matter,'' seems to us to have been sufficient under the circumstances. We conclude that the trial court did not abuse its discretion in holding that this was not cause for a new trial.

Two other contentions are made and very briefly argued: (1) That the wife of Plastino, present at the trial, was guilty of such misconduct as to prejudice the rights of the city in the trial; and (2) that the verdict was excessive, as being prompted by passion and prejudice on the part of the jury. We think it sufficient to say that we have carefully examined both of these contentions and are quite satisfied that there was no abuse of discretion on the part of the trial court in refusing to grant a new trial for either of such reasons.

The judgment is affirmed.

FULLERTON, MAIN, HOLCOMB, and MITCHELL, JJ., concur.

MACKINTOSH, J. (dissenting)—The opinion of the majority says: ''Just as Plastino was starting his machine to cross the pavement and street car tracks be-

hind the north-bound street car, he looked north to see if there were any cars approaching from that direction upon the west track and did not see any, according to his testimony. It is, it must be conceded, somewhat difficult to arrive at the conclusion that he did not see any car approaching from that direction; since his view was unobstructed for a long distance to the north past beyond the north-bound street car, and the fast moving south-bound street car was then approaching from the north upon the west track about a block away." The only objection I have to this statement is that, under the evidence, it is not "somewhat difficult to arrive at the conclusion that he did not see any car approaching from that direction," but that it is impossible to reach such a conclusion. He had stopped before attempting to cross a street one hundred feet in width, upon which he had an unobstructed view for several hundred feet, and the testimony is that there was no other traffic on the street except the street car north-bound, and yet he says that, although he looked, he did not see the south-bound car. I cannot understand how his conduct can be other than negligent, as a matter of law. The only conclusion I can arrive at from this testimony is that he did not look, and under such circumstances as here surrounded him, he must look. I therefore dissent from this opinion, and believe that judgment should have been entered for the appellant.

BRIDGES and HOVEY, JJ., concur with MACKINTOSH, J.