[No. 10713.   Department Two.   May 6, 1913.]

THE STATE OF WASHINGTON, *on the Relation of C. A. Pratt et al., Industrial Insurance Department, Respondent,* v. THE CITY OF SEATTLE, *Defendant,* JOHN J. WARD *et al., Interveners and Appellants.*[1]

MASTER AND SERVANT—REGULATION—WORKMEN'S COMPENSATION—PREMIUMS — METHOD OF COMPUTATION — STATUTES — CONSTRUCTION. Contractors liable to a city for premiums due under the workmen's compensation act are not prejudiced by the fact that the city failed to collect in advance the initial payment to the accident fund, due Oct. 1, 1911, as estimated on their pay rolls for the three preceding months, and subject to final adjustment at the end of the year, but waited until the amount was fixed and made certain by the actual pay rolls during the period for which the contractors were liable; since the amount of the premiums was the same under either method of computation after final adjustment.

SAME—PREMIUMS — COLLECTIONS BY CITY—STATUTES—CONSTRUCTION. A city is entitled to collect from its contractors, engaged in extra hazardous work, the amount which it is obligated to pay to the accident fund, under the workmen's compensation act, where the act provides that it is applicable to extra hazardous work engaged in by the city, that payment shall be made from the treasury of the city, that the pay roll of the contractor shall be the basis of the

[1]Reported in 132 Pac. 45.

computation, and that the municipality shall be entitled to collect from the contractor the full amount paid to the accident fund.

SAME. The act not providing in what manner the collections may be enforced, the city can collect by withholding the amount due the contractor; since the obligations were in equal degree, authorizing a balancing of accounts.

CONSTITUTIONAL LAW—IMPAIRING CONTRACT OBLIGATIONS—MASTER AND SERVANT—REGULATIONS—WORKMEN'S COMPENSATION. The workmen's compensation act being valid as an exercise of the police power, it is not unconstitutional as impairing the obligation of existing contracts; since all contracts are subject to the police power.

Appeal from a judgment of the superior court for King county, Everett Smith, J., entered August 24, 1912, upon findings in favor of the plaintiff, after a trial on the merits before the court, in an action to recover premiums authorized by the workmen's compensation act. Affirmed.

*John W. Roberts*, for appellants.

*The Attorney General* and *S. H. Kelleran, Assistant*, for respondent.

FULLERTON, J.—This action arises under the workmen's compensation act. It was brought by the state of Washington against the city of Seattle to recover the premiums due the accident fund provided for in the act, upon the pay rolls of the various contractors performing public work for the city of Seattle between October 1, 1911, and December 20, 1911. The city had retained from the payments due the contractors sums sufficient to satisfy these premiums, and on the institution of the action the contractors were allowed to intervene therein and defend against their liability to make the payments. The trial resulted in a recovery on behalf of the state for the amount of the premiums claimed, but it was found that the city had retained from the sums due the interveners a larger sum than was necessary to satisfy the premiums, and the interveners were allowed judgment against the city for the excess. The interveners have appealed.

The facts involved in the controversy are not in dispute. The workmen's compensation act was enacted at the twelfth biennial session of the legislature, which began on January 9, 1911, and ended on March 9, 1911. As the act had no emergency clause, it went into effect, in virtue of art. 2, § 31 of the state constitution, ninety days after the adjournment. By § 4 of the act itself, it was made to take effect between employers and workmen on October 1, 1911. The act abolishes the common law remedies for awarding compensation to injured workmen engaged in hazardous employments, and provides that compensation shall be made for accidents occurring therein according to a fixed ratio from a fund collected and administered by the state. Extra hazardous employments are enumerated, and employers of labor engaged therein are required to pay a fixed percentage of their pay rolls into the fund. Extra hazardous work performed for the different municipalities of the state is provided for in § 17 of the act, and reads as follows:

"Whenever the state, county or any municipal corporation shall engage in any extra hazardous work in which workmen are employed for wages, this act shall be applicable thereto. The employer's payments into the accident fund shall be made from the treasury of the state, county or municipality. If said work is being done by contract, the pay roll of the contractor and the sub-contractor shall be the basis of computation and in the case of contract work consuming less than one year in performance the required payment into the accident fund shall be based upon the total pay roll. The contractor and any sub-contractor shall be subject to the provisions of the act, and the state for its general fund, the county or municipal corporation shall be entitled to collect from the contractor the full amount payable to the accident fund, and the contractor, in turn shall be entitled to collect from the sub-contractor his proportionate amount of the payment." Laws 1911, p. 366, § 17.

The contracts between the city of Seattle and the interveners here involved were all entered into after the passage of the act, but prior to the time it went into effect. The per-

formance of the contracts were also entered upon prior to the time the act went into effect, but were completed in December, 1911, and the work accepted by the city in January, 1912. The sums retained by the city were a percentage on the pay rolls of the contractors for work performed between October 1, 1911, and the completion of the work by the contractors. The contracts between the city and the contractors were in writing. They contained no reference to the workmen's compensation act, nor did they make any provision for paying the premiums that might become due thereunder in case the work provided for therein should be prolonged until after the act should become operative.

The assignment of error first to be noticed is the claim that an erroneous method for computing the amount due as premiums was adopted by the state and given effect in the judgment of the court. This claim has its foundation in the provisions of § 4 of the act. It is there provided that the initial payment to the accident fund for the year 1911 shall be made prior to October 1, 1911, and shall be "preliminarily collected upon the pay roll" of the employer from whom collected "of the last preceding three months of operation." It is also provided in the same section that at the end of each year an adjustment of accounts shall be made upon the basis of the actual pay roll, and "any shortage shall be made good on or before February 1, following." The amount claimed to be due from these contractors was taken from their actual pay rolls, and not from the pay rolls of the last three months of operation prior to October 1, 1911. But no preliminary payment was exacted of these employers on October 1, 1911; on the contrary, the state waited before attempting to collect until their contracts were completed, and calculated the percentages upon the actual pay rolls during the period for which the contractors were liable. This is not in violation of the statute. There was no waiver of the right to collect by failing to collect in advance of the actual work. If the collection had been made in advance upon an estimate taken from

pay rolls preceding. October 1 and too much had been collected, the contractors would have been entitled to the excess on the final adjustment at the end of the year 1911; if too little had been collected, they would have been liable for the shortage, which they must have made good on or before the 1st of the following February. The state, instead of collecting from the contractors in advance of the period for which the collections were due, as it might have done, is seeking to collect at the end of such period. This surely can work no hardship upon contractors, since the sums are now due and definitely ascertainable, and the amount sought to be collected is the same as it would have been had the other and perhaps more regular method been pursued. We therefore find no cause for reversal for the reason here suggested.

It is next contended that the trial court erred in holding that the provisions of § 17 of the act, above quoted, authorized the city to withhold from the contractors the amount it is obligated to pay into the accident fund. It is argued that the state, and the state only, is authorized to make such collections. In the brief it is said:

"They [meaning the court and industrial insurance commission] read the language as follows: 'And the state for its general fund shall be entitled to collect from the contractor, and the county shall be entitled to collect from the contractor, and the municipal corporation shall be entitled to collect from the contractor.'

"We read it as follows: 'The state (for its general fund and (or) for the county or municipal corporation) shall be entitled to collect from the contractor.'

"Namely, the power to collect is vested in but one agency, the state. This is entirely consistent with Sec. 8, which says 'If the employer default the state shall collect by action at law.' It is likewise consistent with the other provisions, and with section 16, which provides action shall be in name of state, while we contend that the construction now placed upon it is wholly inconsistent with the whole spirit and tenor of the remainder of the act."

But it seems to us manifest that the construction put upon the language of the statute by the court is the correct construction. Indeed it seems so plain as to scarcely admit of a different interpretation. The act, by the first sentence of the section quoted, is made applicable to any extra hazardous work engaged in by the city in which workmen are employed for wages. By the next sentence it is provided that payments to the accident fund for work so performed shall be made from the treasury of the city. It is then provided that if the work is done by contract the pay roll of the contractor shall be the basis of computation, that the "municipality shall be entitled to collect from the contractor the full amount paid to the accident fund, and the contractor in turn shall be entitled to collect from the subcontractor. . . ." Surely this language can have but one meaning, namely, that the city is entitled to collect from its contractors, where its public works is done by contract, such sums as it is obligated to pay to the accident fund on account thereof.

It is said, however, that the statute does not authorize a collection by withholding the amount thereof from the sums due the contractor, even though it be conceded that power to collect is granted. It is true the method by which the collection is to be made is not prescribed by the statute; but since the authority is given, the city is permitted to pursue any or all of the methods of making the collection that is recognized by the general laws. Where the obligations are of equal degree, it is a recognized method of making collections to balance accounts; that is to say, a person having money in his possession belonging to another may retain such money as an offset to any indebtedness of equal degree therewith which such other may be owing to him. This rule applies with particular force to the state and its municipal institutions. Indeed it would be such a breach of duty as to amount practically to malfeasance in office for an officer of a municipality to pay moneys from the municipal treasury to an individual when that individual was owing a like sum to the

municipality. Clearly, therefore, since these obligations were of equal degree, it was the right of the municipality to retain from the contractors the moneys it was obligated to pay on their behalf.

It is finally contended that the workmen's compensation act is unconstitutional, in so far as it is attempted to be made applicable to hazardous employments performed under contracts entered into prior to the time the act went into effect. A more precise statement of the contention is that it violates the obligations of such contracts. But we cannot agree with this contention. The workmen's compensation act, under which these premiums are sought to be collected is a police regulation, and is a valid exercise of the police power of the state. *State ex rel. Davis-Smith Co. v. Clausen*, 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466. "All contracts are subject to this power, the exercise of which is neither abridged nor delayed by reason of existing contracts." *Seattle v. Hurst*, 50 Wash. 424, 97 Pac. 454, 18 L. R. A. (N. S.) 169. "In its broadest acceptation it means the general power of the state to preserve and promote the public welfare even at the expense of private rights." *Tacoma v. Boutelle*, 61 Wash. 434, 112 Pac. 661. "The strength of the police power lies in the fact that it is not à subject of contract; that it cannot be bartered or bargained away." *State ex rel. Webster v. Superior Court*, 67 Wash. 37, 120 Pac. 861. "That the exercise of such power may be hampered or restricted to any extent by contracts previously made between individuals or corporations, is inconceivable." *Cowley v. Northern Pac. R. Co.*, 68 Wash. 558, 123 Pac. 998, 41 L. R. A. (N. S.) 559. The foregoing principles make it clear that it is within the power of the state to enact and enforce police regulations, even though to do so may render less valuable certain contracts between individuals and totally abrogate others. If the principle were not sound the result would be that individuals and corporations could, by private contract between themselves, in anticipation of legislation, render of no

avail the police regulations of the state, no matter how vital or necessary such regulations might prove to be for the public good. But the reasoning upon which the principle rests is fully stated in the cases above cited, and it is not necessary to enlarge upon it here. It is sufficient to say that the contracts between the city and the interveners is not unlawfully affected by the act of the legislature here in question.

The judgment appealed from will stand affirmed.

CROW, C. J., MAIN, ELLIS, and MORRIS, JJ., concur.