[No. 52293-6.   En Banc.   February 5, 1987.]

THE STATE OF WASHINGTON, *Appellant,* v. TERRY ADAMS, ET AL, *Respondents.*

*Kenneth O. Eikenberry, Attorney General,* and *Spencer W. Daniels, Assistant,* for appellant.

*Douglas P. Wyckoff* (of *Swanson, Parr, Cordes, Younglove, Peeples & Wyckoff, P.S.*) and *Richard D. Eadie,* for respondents.

CALLOW, J.—QUAERE: What is the appropriate procedure for the State to recover alleged overpayments of salary previously made to state employees?

The trial court held that the State may not effect recovery by summarily deducting amounts from the employees' future paychecks, but instead must file a civil action seeking a money judgment in the amount of the alleged overpayments. The trial court further held that the State's present declaratory judgment action did not seek such a money judgment and dismissed the action, requiring the State to file a new action if it wishes to collect the claimed overpayments. We affirm in part and reverse in part. We hold that the State must file a civil action for a money judgment, but that the present action sufficiently seeks such relief. We remand to the trial court for a determination of the amounts claimed to have been overpaid to each

state employee named in this action.

The defendants in this case were employees of the State Department of Transportation between July 1981 and January 1983. Pursuant to former WAC 356–15–060, they were entitled to a "shift differential" premium of 20 cents per hour for working evening or night shifts. The State Personnel Board had proposed an increase in the shift premium to 40 cents per hour, but the Legislature never approved such an increase. However, the Department, anticipating that the increase would be approved, programmed its payroll computer to pay the 40–cent–per–hour rate beginning on July 1, 1981. The Department did not detect this error until January 1983, when it reprogrammed its computer to pay the employees at the proper 20–cent–per–hour rate.

The State claimed that because of the computer error, 1,337 employees were overpaid a total of $120,197.67. In mid–1983, the State commenced its efforts to recoup the moneys owed by those employees still on the Department payroll. The Attorney General initially informed the unions representing the employees that, unless they agreed to repay the amounts allegedly due, the Department would begin deducting $50 per month from the paycheck of each employee until the amount he or she owed was recouped. Ultimately, the Department did not take such action, but sent letters to the employees in January and May of 1984 asking for voluntary repayment. This effort proved only partially successful.

In March 1985, the State filed a complaint to recover $53,833.08, still claimed as owing by 430 employees on the Department payroll. (Subsequently, some of the employees agreed to repayment and were dismissed from the lawsuit. The State did not sue those employees who had since left the Department.) The individual amounts claimed to be owed varied widely, ranging from 30 cents to $971.20. Although the employees admitted being paid a shift differential premium of 40 cents per hour (an overpayment of 20 cents per hour), they challenged the State's claims regarding the total amount of overpayments. Some of the

employees also filed affidavits stating that they had agreed to work evening or nights shifts in reliance upon the promised 40–cent–per–hour shift premium.

The State sought a declaratory judgment that: (1) the employees each had a duty to repay to the State the amount of their alleged overpayments, and that (2) the State had the authority to recoup these overpayments by deducting "reasonable amounts" from each employee's paycheck until the amounts respectively owed were recovered. The State's supporting memoranda claimed the right to make such payroll deductions without first going to court and obtaining a money judgment against the employees.

The State moved for summary judgment on its complaint. The trial court instead granted summary judgment for the defendant employees. The court held that the State had no legal authority to make involuntary deductions from the employees' paychecks, and held that the State would be required to file a new action to recover any overpayments. The State directly appealed to this court.

This appeal presents three issues. First, is the State *estopped from recovering overpayments made to its employees?* Second, if not, may the State recover the alleged overpayments by simply making unilateral deductions from the employees' future paychecks? Third, if the State must file a civil action to prove the amount of the overpayments, should the present case be dismissed and the State required to refile, or should the State be allowed to prove the amount of the overpayments on remand?

I

■■ Turning to the first issue, we agree that the State is not estopped from collecting the overpayments. The State erroneously paid the employees a 40–cent–per–hour shift differential premium instead of the 20–cent–per–hour premium mandated by former WAC 356–16–060. Since the payments exceeded the amounts permitted by law, they were ultra vires and void. The State has the right to recover such payments. *State v. Continental Baking Co.,* 72 Wn.2d

138, 141–42, 431 P.2d 993 (1967); *Pacific Cy. v. Willapa Harbor Pub'g Co.,* 88 Wash. 562, 563–64, 153 P. 360 (1915); *State ex rel. Grant Smith & Co. v. Seattle,* 74 Wash. 438, 445–46, 133 P. 1005 (1913). Indeed, it has a duty to do so. *See Tacoma v. Peterson,* 165 Wash. 461, 5 P.2d 1022 (1931); *State ex rel. Pratt v. Seattle,* 73 Wash. 396, 132 P. 45 (1913). The employees contend that estoppel should nonetheless apply because many employees relied on the promise of a 40–cent–per–hour premium in agreeing to work evening or night shifts for the Department. However, when the acts of a governmental body are ultra vires and void, those acts cannot be asserted as working an estoppel against the government. *Washington Educ. Ass'n v. Smith,* 96 Wn.2d 601, 610, 638 P.2d 77 (1981); *Finch v. Matthews,* 74 Wn.2d 161, 172, 443 P.2d 833 (1968); *Arbogast v. Westport,* 18 Wn. App. 4, 7, 567 P.2d 244 (1977). The employees have raised additional defenses to the State's right of recovery including waiver, insufficiency of service of process, and failure to join necessary parties. However, as the basis for these defenses is not supported by legal argument, we deem them waived. *Smith v. King,* 106 Wn.2d 443, 451, 722 P.2d 796 (1986); *Puget Sound Plywood, Inc. v. Mester,* 86 Wn.2d 135, 142, 542 P.2d 756 (1975).

## II

The next issue concerns the procedures which the State must follow to recover the alleged overpayments. The State contends that it may unilaterally deduct "reasonable amounts" from the employees' subsequent paychecks, if the employees have been given prior notice of the amounts allegedly overpaid and the employees refuse to voluntarily repay these amounts. The employees contend that such unilateral action by the State violates their constitutional right to due process. We agree, and hold that in the absence of any statutory procedures to protect the employees from an erroneous claim, the State may collect the overpayments only by bringing a civil action.

The State relies primarily on *Pratt* and *Peterson. Pratt*

held that the City could collect workers' compensation premiums from a public works contractor by deducting these premiums from the amount due the contractor on his contract. *Peterson* held that the City could withhold, from the amount due on a contract, money which the contractor owed the City on a separate promissory note. In neither of these early cases did we approve of the summary withholding of funds from *wages*. The *Pratt* and *Peterson* cases are not controlling here.

The State agrees that there are presently no statutory procedures governing the recovery of alleged overpayments to state employees. Tme question, thus, is whether the summary withholding of future wages to recover overpayments comports with due process, where the employees dispute the existence or amount of overpayments.

*Goldberg v. Kelly*, 397 U.S. 254, 267, 25 L. Ed. 2d 287, 90 S. Ct. 1011 (1970) stated: "'The fundamental requisite of due process of law is the opportunity to be heard.' The hearing must be 'at a meaningful time and in a meaningful manner.'" (Citations omitted.) An important consideration in the due process equation is "the private interest that will be affected by the official action". *Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976). In *Sniadach v. Family Fin. Corp.*, 395 U.S. 337, 23 L. Ed. 2d 349, 89 S. Ct. 1820 (1969), the Court was presented with a wage garnishment statute which provided the employee no opportunity to respond prior to the impoundment of his wages. After noting that wages are a "specialized type of property", the Court concluded,

> [w]here the taking of one's property is so obvious, it needs no extended argument to conclude that absent notice and a prior hearing this prejudgment garnishment procedure violates the fundamental principles of due process.

(Citation omitted.) *Sniadach*, at 342.

■ Here, as in *Sniadach*, the employees are to be summarily deprived of their wages without any opportunity to respond. Such a procedure does not provide due process. A

similar situation was recently presented in *Benton v. Wilmer–Hutchins Indep. Sch. Dist.*, 662 S.W.2d 696 (Tex. Ct. App. 1983). There, a school district alleged that it had overpaid its teachers during the prior school year. The teachers disputed the accuracy of the district's figures. Nevertheless, the district contended that it had the right to resort to self–help by simply deducting the alleged overpayments from the current salaries due. The court disagreed, pointing out that this would unfairly force the teachers to file a suit if they wished to challenge the validity of the district's figures and was contrary to the policy of the State to protect current wages from the claims of creditors. *Benton*, at 698. *See also Feinberg v. Board of Educ.*, 74 Misc. 2d 371, 344 N.Y.S.2d 618 (1973), where a school district was prohibited from summarily withholding 1 month's pay from a teacher to offset past alleged salary overpayments.

The State has cited *Barnes v. Thomas*, 96 Wn.2d 316, 635 P.2d 135 (1981), *Califano v. Yamasaki*, 442 U.S. 682, 61 L. Ed. 2d 176, 99 S. Ct. 2545 (1979), and *Geftakys v. State Personnel Bd.*, 138 Cal. App. 3d 844, 188 Cal. Rptr. 305 (1982), to support its contention that it need not file a civil action prior to recouping overpayments. In all of these cases, however, there were appropriate statutory or regulatory procedures to protect the individual from an erroneous claim by the State. In *Barnes*, the State Department of Social and Health Services (DSHS) sought to recover excess welfare and food stamp payments. DSHS relied on the following statutory grant of authority:

> If a recipient receives public assistance and/or food stamps . . . in an amount greater than that for which he is eligible, the portion of the payment to which he is not entitled shall be a debt due the state . . .
>
> Debts due the state pursuant to the provisions of this section, may be recovered by the state by deduction from the subsequent assistance payments to such persons . . . or may be recovered by a civil action instituted by the attorney general.

RCW 74.04.300. We held that this statute allowed DSHS to

recoup overpayments without first establishing the alleged debt in a civil action. We noted, however, that a companion statute afforded an aggrieved recipient an alternative forum in which to challenge the debt:

> The establishment of the overpayment is clearly within the province of DSHS under [RCW 74.04.300]. If an individual chooses to contest it, the forum to do so is provided by the hearing statute, RCW 74.08.070.

*Barnes,* at 320. We concluded:

> It appears to us that the intent of the legislature was to confer authority on DSHS to determine a debt is owed the state, *give the individual a hearing,* and *then* proceed to collect the debt, if owed, through deductions from future payments . . . This comports with due process and what we believe to be sound public policy.

*Barnes,* at 321. (Italics ours.) Thus, *Barnes* does not support the State's request for authority to make unilateral paycheck deductions to recover overpayments, without first affording the individual an opportunity to be heard on the matter.

Nor do *Califano* or *Geftakys* support the State's position. *Califano* concerned alleged overpayments of federal social security assistance. A portion of the relevant statute allowed the Department of Health, Education and Welfare to recoup such overpayments by deduction from future assistance payments. 42 U.S.C. § 404(a)(1). The Court held that where the recipient's only defense is a challenge to the amount allegedly owed, an oral prerecoupment hearing is not required. *Califano,* at 695–96. However, the recipients were, upon being informed of an alleged overpayment, given an opportunity to file a written request for reconsideration. HEW then reviewed the relevant documents and acted upon the reconsideration request *prior to* commencing recoupment of any alleged overpayments. *Califano,* at 686–87.

*Geftakys* concerned asserted overpayments of salaries to teachers. The State commenced recoupment without giving the aggrieved teachers any opportunity to contest the

amount owed. The California court, following *Califano,* stated:

> As to recoupment of past overpayments from appellant's salary, however, we find that due process requires that state employees are entitled to notice and an opportunity to respond before recoupments of past salary overpayments are commenced. The consideration of the response can be upon the documents in the matter and does not require an oral, trial–type, hearing.
>
> In the case at bench [the State] provided appellant with adequate notice, *but commenced recoupment before giving her an opportunity to respond and to request reconsideration. To that extent,* [the State] *erred.*

(Italics ours.) *Geftakys,* at 871.

In short, due process requires that state employees be given an opportunity to respond where there is a good faith dispute concerning the amount of any past overpayments. Private employers may not deduct unauthorized setoffs from an employee's wages, but must bring suit to collect on alleged debts owed by an employee to the employer. *Cameron v. Neon Sky, Inc.,* 41 Wn. App. 219, 223, 703 P.2d 315 (1985). Where as here, there are no statutory procedures to protect public employees from an erroneous claim, the State's only means of recovery is by filing a civil action seeking a money judgment for the amount of overpayments.

### III

The final issue is whether the State's prayer for relief is sufficiently broad to allow the trial court, on remand, to enter a money judgment against the individual employees who have been overpaid. The prayer for relief asked for (1) an order declaring that the individual defendants had a duty to repay the State the amount of their respective overpayments, (2) an order declaring that the State could recover the overpayments by deducting "reasonable amounts" from the employees' future paychecks, and (3) any other relief as is just and equitable. The trial court evidently believed that because the complaint did not specifi-

cally seek a "money judgment", such relief was therefore not available, and the State should have to file a new action if it wishes to seek this relief. We disagree.

■ CR 8(a) provides:

A pleading which sets forth a claim for relief . . . shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief and (2) a demand for judgment for the relief to which he deems himself entitled.

It is well established that pleadings are to be liberally construed; their purpose is to facilitate proper decision on the merits, not to erect formal and burdensome impediments to the litigation process. *Caruso v. Local 690, Int'l Bhd. of Teamsters*, 100 Wn.2d 343, 349, 670 P.2d 240 (1983); *Simpson v. State*, 26 Wn. App. 687, 691, 615 P.2d 1297 (1980). If a complaint states facts entitling the plaintiff to some relief, it is immaterial by what name the action is called. *Simpson*, at 691; *see Christensen v. Swedish Hosp.*, 59 Wn.2d 545, 548–49, 368 P.2d 897 (1962). Furthermore, initial pleadings which may be unclear may be clarified during the course of summary judgment proceedings. *See Schoening v. Grays Harbor Comm'ty Hosp.*, 40 Wn. App. 331, 336–37, 698 P.2d 593, *review denied*, 104 Wn.2d 1008 (1985).

Here, while the State's original pleadings did not specifically seek a "money judgment", the State's brief in support of summary judgment made it clear that it sought such alternative relief in the present action, if its request for the authority to make summary paycheck deductions were denied, stating:

[A]t a minimum, a judgment against the employees for the amount of their overpayments should be entered.

Furthermore, each employee was individually served and apprised of the amount which he or she allegedly owed, and was notified of the State's claim that he or she had a duty to repay this amount. The employees were adequately notified that a money judgment might be entered against them.

We remand to the trial court for a hearing to determine

the amounts overpaid, if any, to each employee. At this hearing, the employees may present evidence to challenge the State's computations. A money judgment may then be entered against each employee to whom an overpayment was made.

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, GOODLOE, and DURHAM, JJ., concur.