IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MONICA HUNT, | ) | |
| | ) | No. 32207-6-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF WASHINGTON | ) | UNPUBLISHED OPINION |
| DEPARTMENT OF ECOLOGY, | ) | |
| | ) | |
| Respondent. | ) | |

KORSMO, J. — Monica Hunt challenges a ruling of the pollution control hearings Board (PCHB) fining her for clearing trees from a floodplain on her property without permission. We affirm.

FACTS

This controversy arose following a flood along the Manastash Creek in Kittitas County. Ms. Hunt owns and lives on property along the creek, which is a tributary of the Yakima River. The Yakima River has been designated as an impaired water body under the federal Clean Water Act (CWA). Prior to any of the events at issue here, the Department of Ecology (DOE) in 2005 issued a series of reports determining the total maximum daily loads (TMDL) allowable in the upper Yakima River basin. Included in

these reports were determinations of the allowable sediment and temperature TMDL levels, as well as determinations that damage to riparian corridors caused sediment discharges from erosion of the banks and increased temperatures to affected waters, harming the wildlife present. The reports noted that these issues were of particular concern for Manastash Creek.

Ms. Hunt's property includes a slight bluff that slopes down into the riparian corridor of Manastash Creek. She used some of the area for pasturing horses. An irrigation return flow ditch flows from the upper portion of her property, down the bluff into the riparian corridor, then parallel to the creek for a short distance before flowing into the creek. In May 2011, flooding caused damage to the ditch and left standing water throughout Ms. Hunt's pastureland.

In response to the flooding, Ms. Hunt contacted the Kittitas County Conservation District (KCCD) and then Brent Renfrow with the Washington State Department of Fish and Wildlife (DFW). When Mr. Renfrow visited her property, she expressed her desire to remedy the damage done by the flood, as well as cut branches away from her power lines. Mr. Renfrow told Ms. Hunt that any work which involved placing equipment in the creek or cutting trees from the creek's banks would require a permit, but that she could certainly cut the branches away from the power lines. In any event, he recommended that she wait to do any work until late fall or winter, when the waters had receded. After the water mostly receded in November, Ms. Hunt cleared debris that had

2

been deposited in the ditch and removed trees from the riparian corridor. Many of the trees removed were live, mature trees that had existed prior to the flood. She also brought in a track hoe with a 42-inch bucket to excavate and widen the ditch at several points.

On November 17, 2011, DOE environmental specialist Bryan Neet visited the neighbor's property across the creek in response to reports that Ms. Hunt had been working in the riparian corridor. Based on Mr. Neet's observations and recommendations, DOE issued a civil order of violation and a $16,000 penalty to Ms. Hunt for "the Pollution created by ditching, filling and altering the creek [in] violation of RCW 90.48.080." After further consideration, the basis for the order was clarified to indicate that Ms. Hunt's activities had occurred through the riparian corridor and adjacent to and in the irrigation ditch rather than in the main channel of Manastash Creek. The order also required Ms. Hunt to submit and implement a restoration plan.

Ms. Hunt appealed the order to the PCHB, which affirmed the order, but reduced the penalty to $750, and stayed the submission and implementation of the restoration plan pending further determinations.[1] In reducing the penalty, the PCHB took into consideration the effort Ms. Hunt took prior to any work as well as the fact that she took

---

[1] Subsequent flooding on November 22 diverted the creek through the newly cleared section of Ms. Hunt's property.

No. 32207-6-III
*Hunt v. Dep't of Ecology*

quick remedial action when notice of potential violations came to her attention. Ms. Hunt appealed the decision to the superior court, challenging PCHB's legal determinations, but the court affirmed in a memorandum opinion. She then timely appealed to this court.

ANALYSIS

Ms. Hunt presents four matters for consideration. She contends that her efforts in cleaning the irrigation ditch were exempt from DOE action and also did not violate RCW 90.48.080. She further argues that DOE is estopped from proceeding against her and that she is entitled to attorney fees. We address each contention in the noted order.

*Exemption*

Ms. Hunt initially contends that her efforts at repairing the flood damage to the irrigation control were exempt from prosecution under the pollution control statutes since irrigation ditches are not expressly named in the statute. Although the facts establish that her actions went far beyond repairs to the irrigation ditch, we also disagree with her interpretation of the relevant statutes.

This argument brings basic principles of statutory construction into play. The purpose of statutory construction is to effectuate the intent of the legislature. *Roberts v. Johnson*, 137 Wn.2d 84, 91, 969 P.2d 446 (1999). Statutes that are clear and unambiguous do not need interpretation. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). However, when interpretation is necessary, the legislation "must be interpreted and construed so that all the language used is given effect, with no portion rendered

4

meaningless or superfluous." *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996). Appellate courts review questions of statutory interpretation de novo. *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005).

This case is here on review of administrative agency action, a fact that brings other principles into play. An agency decision can be invalidated on review where an agency has erroneously interpreted or applied the law. RCW 34.05.570(3)(d). In reviewing agency determinations, matters of law are reviewed de novo. *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 136 Wn.2d 38, 46, 959 P.2d 1091 (1998). Agency interpretation of the law within its specialized expertise is given deference, but is not binding. *Id.*

This action was brought under RCW 90.48.080. It states:

> It shall be unlawful for any person to throw, drain, run, or otherwise discharge into any of the waters of this state, or to cause, permit or suffer to be thrown, run, drained, allowed to seep or otherwise discharged into such waters any organic or inorganic matter that shall cause or tend to cause pollution of such waters according to the determination of the department, as provided for in this chapter.

Two definitions of import to this appeal are found in RCW 90.48.020. The first is "waters of the state." That definition recites:

> Wherever the words 'waters of the state' shall be used in this chapter, they shall be construed to include lakes, rivers, ponds, streams, inland waters, underground waters, salt waters and all other surface waters and watercourses within the jurisdiction of the state of Washington.

The second definition is the word "pollution." The statute states:

Whenever the word 'pollution' is used in this chapter, it shall be construed to mean such contamination, or other alternation of the physical, chemical or biological properties, of any waters of the state, including change in temperature, taste, color, turbidity, or odor of the waters, or such discharge of any liquid, gaseous, solid, radioactive, or other substance into any waters of the state as will or is likely to create a nuisance or render such waters harmful, detrimental or injurious to the public health, safety or welfare, or to domestic commercial, industrial, agricultural, recreational, or other legitimate beneficial uses, or to livestock, wild animals, birds, fish or other aquatic life.

*Id.*

Ms. Hunt contends that the phrase "waters of the state" is ambiguous and does not include the irrigation ditch, thus putting her activities beyond reach of the anti-pollution statute.[2] She also cites to a comment by four legislators during passage of the 1967 overhaul of Washington's water pollution statute. The legislators stated that usual agricultural uses, including the normal return flow of irrigation waters, would not constitute pollution activities. *See* House Journal, 1967 session, at p. 531. Even assuming that the statement of four legislators reflected the understanding of a majority of the legislature and that all of Ms. Hunt's actions were typical agricultural activities, the commentary does not advance Ms. Hunt's argument. The statement simply does not

---

[2] It is not entirely clear how this would exempt Ms. Hunt's activities from enforcement action. Even if one assumes that the ditch is not a water of the state, it still discharges into Manastash Creek on her property. Unless she somehow removed pollutants from the ditch water prior to its discharge into the creek, any pollution would immediately discharge into the creek and pollute it.

attempt to elucidate the definitions enacted in the legislation, particularly the definition of "waters of the state." It is, rather, a statement of the expected enforcement approach to be undertaken by the Pollution Control Commission.

The definition of "waters of the state" is very broad, but it is not ambiguous. It appears to capture nearly every flow of water in the state, including "all other surface waters and watercourses" beyond those expressly named in the definition. RCW 90.48.020. Irrigation ditches that flow directly into creeks and rivers are included in that definition.

The Attorney General reached the same conclusion shortly after the 1967 amendments to RCW 90.48 that were the subject of the legislative commentary relied upon by Ms. Hunt. The inclusion of irrigation watercourses was one of two subjects addressed in 1969 Attorney General Opinion No. 4. 1969 Op. Att'y Gen. No. 4. In the course of the analysis, the opinion noted that Washington had regulated water pollution since 1945 and that the Pollution Control Commission had expressly regulated water in "canals, drains, wasteways and reservoirs" since 1954. *Id.* at 5-6. Applying standard rules of statutory construction, the opinion concluded that the 1967 amendments did not change the Pollution Control Commission's authority over those waterways. *Id.* at 9-10.

The trial court, like the PCHB before it, properly concluded that the PCHB had authority to regulate the irrigation ditch. Ms. Hunt's activities were not exempted from the reach of the statute.

7

*RCW 90.48.080*

Ms. Hunt next argues that she did not violate RCW 90.48.080 because DOE did not show that Manastash Creek actually was polluted by her activities. The statute does not require visual or quantitative proof of actual pollution. Accordingly, the evidence does support the adjudication.

An agency order can be overturned on review if it is determined that the order "is not supported by evidence that is substantial when viewed in light of the whole record before the court." RCW 34.05.570(3)(e). We review the Board's decision, not that of the superior court. *Alpha Kappa Lambda Fraternity v. Wash. St. Univ.*, 152 Wn. App. 401, 413, 216 P.3d 451 (2009). The non-prevailing party below bears the burden of proving the Board's decision was incorrect. *Id.* In evaluating a challenge to the sufficiency of the evidence to support a finding, this court looks to see if the finding is supported by "substantial evidence" in the record as a whole. RCW 34.05.570(3)(e). "Substantial evidence" is evidence sufficient "to persuade a rational, fair-minded person that the finding is true." *Cantu v. Dep't of Labor & Indus.*, 168 Wn. App. 14, 21, 277 P.3d 685 (2012). When reviewing an agency determination on summary judgment, as in this case, we must overlay the APA standard of review with the summary judgment standard. *Verizon Nw., Inc. v. Wash. Emp't Sec. Dep't*, 164 Wn.2d 909, 915-16, 194 P.3d 255 (2008). Summary judgment is appropriate where the undisputed facts entitle the moving party to judgment as a matter of law. *Id.* at 916.

The undisputed evidence supported the summary judgment. The evidence indicates that Ms. Hunt removed a few dozen live, mature trees and crushed the vegetation in the riparian corridor of Manastash Creek immediately surrounding a drainage ditch. The State presented undisputed evidence in the form of expert opinion that destruction of trees and vegetation in the riparian corridor loosens ground soil and removes shade, respectively allowing the discharge of sediment and heat into the water of the drainage ditch, and in turn into Manastash Creek. The State also presented TMDL studies showing that increased sediment and heat are harmful to aquatic life.[3] These studies served to establish that these types of discharge tend to cause pollution. Consequently, the PCHB was presented with substantial evidence that Ms. Hunt's activities caused or allowed the discharge of sediment and heat into Manastash Creek,

---

[3] Ms. Hunt argues that Ecology's claims are based only on speculation, and that Ecology must provide evidence actually documenting the effect of Ms. Hunt's activities on Manastash Creek. Although she does not dispute the studies themselves, she disputes the PCHB's finding that the TMDL studies provide unrefuted evidence of the impact her activities had on the waters. Br. of Appellant at 34. Her only legal support for this argument is *Lemire v. Dep't of Ecology*, 178 Wn.2d 227, 309 P.3d 395 (2013). That reliance is misplaced. *Lemire* specifically rejected this argument, holding that an unrefuted expert declaration was sufficient to establish that a creek was polluted, that conditions on Mr. Lemire's property were recognized causes of discharge of organic matter, and that such organic matter tends to cause pollution of waters. *Id.* at 236-37. Here, the unrefuted TMDL studies served a similar purpose of establishing that discharge of sediment and heat tended to cause pollution.

and that such sediment and heat tend to cause pollution. None of this evidence was refuted by Ms. Hunt, and so summary judgment in favor of Ecology was appropriate.

The evidence was sufficient to support the judgment.

*Estoppel*

Ms. Hunt next argues that DOE should have been estopped from pursuing its case against her because she acted in reliance on the representations of employees of KCCD and DFW. She fails to satisfy her factual or legal burdens on this argument.[4]

Well settled standards govern this challenge. In order to establish a claim of equitable estoppel, a party must prove by clear, cogent, and convincing evidence, (1) an admission, statement, or act inconsistent with a claim afterwards asserted; (2) an action by another made in reasonable reliance on that act, statement, or admission; and (3) injury to the relying party that would result from allowing the first party to contradict or repudiate the prior act, statement, or admission. *Robinson v. City of Seattle*, 119 Wn.2d 34, 82, 830 P.2d 318 (1992). Equitable estoppel against the government is disfavored. *Kramarevcky v. Dep't of Social & Health Services*, 122 Wn.2d 738, 743, 863 P.2d 535 (1993). Consequently, in order to establish a claim of estoppel against the government, a party must show additionally, (4) that estoppel is necessary to prevent a manifest

---

[4] It does not appear that the estoppel claim was argued below – other than a brief mention in a superior court filing -- and arguably is not properly before this court. However, DOE does not argue the point and we will consider the claim.

injustice, and (5) that the exercise of government functions is not impaired as a result of the estoppel. *Id.*

Here, Ms. Hunt has made little more than a bare bones assertion of estoppel and has failed to argue either of the two additional requirements to establish estoppel against the government. Fundamentally, her claim fails because she has not established any prior act, statement, or admission which is inconsistent with the claim brought *by DOE*. Ms. Hunt points to her meeting with Mr. Renfrow as government approval for her later actions. However, Mr. Renfrow only made representations concerning what activities would require a permit from DFW, and he opined that Ms. Hunt could cut branches away from the power lines running to her house. He made no representations concerning the restoration or clearing of the pasture or ditch, nor any representations concerning water pollution. Ms. Hunt interprets that silence as government approval, but it is not. However, the PCHB significantly reduced her civil penalty based on her effort to obtain government approval prior to doing any work.

Even if Mr. Renfrow had represented that Ms. Hunt's activities would not constitute polluting of waters, that representation still would not give rise to equitable estoppel in the present case. Acts of a government body which are *ultra vires* and void cannot be asserted as working an estoppel against the government. *State v. Adams*, 107 Wn.2d 611, 615, 732 P.2d 149 (1987); *see also Washington Educ. Ass'n v. Smith*, 96 Wn.2d 601, 610, 638 P.2d 77 (1981). Here, RCW 90.48 vests in DOE the jurisdiction to

control and prevent pollution of waters. Any act or statement concerning enforcement of this statute by Mr. Renfrow, as an agent of DFW, would be *ultra vires* and void because DFW has no jurisdiction or power with respect to RCW 90.48. Therefore, his representations could not estop DOE from enforcing this statute.

The estoppel argument is without merit.

*Attorney Fees*

Finally,[5] Ms. Hunt contends that she should be awarded her attorney fees under either RCW 4.84.350 or RCW 90.14.190. Neither is applicable to this case.

RCW 4.84.350(1) entitles a party responding to an agency action to her attorney fees when she prevails unless the action was substantially justified. As Ms. Hunt has not prevailed in this appeal, she is not entitled to fees under this statute.

Similarly, RCW 90.14.190 does not apply. That statute involves appeals from water resource determinations made by DOE. It does not address unsuccessful pollution violation actions. Furthermore, to prevail under this statute, a party would both have to prevail and establish injury from the resource determination. Ms. Hunt had done neither.

---

[5] Ms. Hunt also argues that the PCHB acted in an arbitrary and capricious manner in rejecting her evidence and argument concerning her claimed exemption of the water pollution statute and in evaluating the evidence in support of the case. As we have rejected these arguments on their merits, there is no point in further addressing this derivative claim.

No. 32207-6-III
*Hunt v. Dep't of Ecology*

The judgments are affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Fearing, J.

13