IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 37879-9-III |
| | ) | |
| LAURA O'ROURKE, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| TIMOTHY O'ROURKE, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Timothy O'Rourke appeals a superior court order holding him in contempt of a postsecondary education child support order. We affirm and award Laura O'Rourke reasonable attorney fees.

FACTS

After Timothy and Laura O'Rourke[1] divorced, they entered into a CR 2A agreement to pay for their son Ryan's postsecondary expenses. The agreement provided in pertinent part:

---

[1] We refer to the parties by their first names for purposes of readability.

> The parents will be responsible for equal one third share as it pertains to Ryan and Ryan only as to the following expense: those we generally associate with college expenses, if he is living on campus or is living where the school is at, the parties will be responsible for one third of the published costs of the institution. We will not go beyond Washington State University [(WSU)]. Anything above and beyond that is going to be Ryan's responsibility. He can go to WSU, Eastern, Western but anything above that is going to be Ryan's problem. . . . The published costs are books, fees, tuition, room, board and transportation. Those are the expenses that are applied as normal college expenses.
>
> . . . .
>
> A clarification, if Ryan continues to reside with either the mother or the father, currently he resides with the mother, and the mother is not receiving any child support for him and his living expenses. The father would not get any child support either if Ryan lived with his father. The parties agree that is not to be included. If he lives in Pullman, as an illustration, or in Cheney as an illustration, and he live in the dorms, it is the cost as published. If he lives off-campus, it is the cost as published for his living expenses, room and board. Those the parties agree be responsible for, one third each.

Clerk's Papers (CP) at 124-25. The agreement was later incorporated into a child support order.

In fall of 2020, Ryan began school at WSU-Spokane. Laura sent Timothy a request for $2,326.00 to cover Ryan's living expenses for fall semester, based on WSU-Spokane's published costs. WSU-Spokane's published costs included $5,924.00 in "room and board" and $1,054.00 in "miscellaneous living expenses" per semester. Timothy provided a check for $623.42, which he claimed covered his portion of living expenses for one month and $160.00 for books. Timothy referenced a webpage that listed

2

published costs for WSU-Pullman. According to the website, average costs for WSU-Pullman are $6,822.00 for "housing" and $4,300.00 for "dining" per year.

After receiving Timothy's $623.42 payment, Laura pointed out that Ryan was at WSU-Spokane and the published costs for WSU-Spokane were different from WSU-Pullman. Despite this information, Timothy refused to make additional payments. Timothy would not recognize the applicability of the WSU-Spokane webpage. Nor did he assert that he should only be required to cover one-third of the $5,924.00 "room and board" costs for WSU-Spokane. If Timothy had recognized the applicability of the published costs on the WSU-Spokane webpage, but claimed he was only liable for one-third of the "room and board" costs (i.e., no liability for the "miscellaneous living expenses"), then his monthly one-third payment plus $160.00 for books would have been $653.67.[2] This is higher than the $623.42 actually paid.

Laura moved to find Timothy in contempt of the child support order for failing to pay for Ryan's "post-secondary books + room and board." A court commissioner found Timothy in contempt of the child support order.

---

[2] The WSU-Pullman and WSU-Spokane websites list the same costs for books: $960.00 per year or $480.00 per semester.

No. 37879-9-III
*In re Marriage of O'Rourke*

Timothy timely appeals.

ANALYSIS

Timothy makes two challenges to the contempt order. First, he claims Laura's motion failed to provide adequate notice because it requested a money judgment for "past due post-secondary books + room and board," not a request for "books + room and board + miscellaneous living expenses." Second, he makes the substantive argument that he is not in contempt because the CR 2A agreement only required him to pay room and board, not additional "living expenses." We address each claim in turn.

*Pleading*

"Washington is a notice pleading state and merely requires a simple, concise statement of the claim and the relief sought." *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 352, 144 P.3d 276 (2006) (citing CR 8(a)). Pleadings are to be liberally construed to facilitate a proper decision on the merits. *State v. Adams*, 107 Wn.2d 611, 620, 732 P.2d 149 (1987). "Complaints that fail to give the opposing party fair notice of the claim asserted are insufficient." *Pac. Nw. Shooting Park*, 158 Wn.2d at 352.

Laura adequately pleaded her motion for contempt because it put Timothy on fair notice of her asserted claim. Laura's contempt motion adequately raised the issue

4

of nonpayment of Ryan's postsecondary living expenses. There is no indication Timothy was confused about the basis for Laura's motion. The level of specificity set forth in Laura's motion was sufficient.

*Contempt*

We review a contempt order for abuse of discretion. *In re Marriage of Williams*, 156 Wn. App. 22, 27, 232 P.3d 573 (2010). "A court abuses its discretion by exercising it on untenable grounds or for untenable reasons." *Id*. The trial court's findings on a contempt motion are reviewed for substantial evidence. *In re Marriage of Rideout*, 150 Wn.2d 337, 351, 77 P.3d 1174 (2003). "Substantial evidence exists so long as a rational trier of fact could find the necessary facts were shown by a preponderance of the evidence." *In re Welfare of A.W.*, 182 Wn.2d 689, 711, 344 P.3d 1186 (2015). "Unchallenged findings of fact are verities on appeal." *Id*.

Under RCW 26.18.050(1), if "an obligor fails to comply with a support or maintenance order, a petition or motion may be filed . . . to initiate a contempt action as provided in chapter 7.21 RCW." Contempt includes "intentional . . . [d]isobedience of any lawful judgment, decree, order, or process of the court." RCW 7.21.010(1)(b).

"In determining whether the facts support a finding of contempt, the court must strictly construe the order alleged to have been violated, and the facts must constitute a

plain violation of the order." *In re Marriage of Humphreys*, 79 Wn. App. 596, 599, 903 P.2d 1012 (1995).

Here, the commissioner's findings support the decision to hold Timothy in contempt. The commissioner found the CR 2A agreement incorporated into the child support order required Timothy to pay Ryan's postsecondary living expenses. The commissioner further found the calculation Laura produced was the proper estimate of Ryan's living expenses. Finally, the court found Timothy intentionally disobeyed the order by refusing to pay Laura even after his mistake in calculation was brought to his attention. Timothy does not assign error to any of these findings, and therefore they are verities on appeal. The commissioner's findings establish that Timothy intentionally violated the child support order. Therefore, the commissioner did not abuse their discretion by holding Timothy in contempt of the child support order.

The commissioner's findings are supported by substantial evidence as well. The CR 2A agreement clearly stated "[i]f [Ryan] lives off-campus, it is the cost as published for his *living expenses*, room and board. Those the parties agree be responsible for, one third each." CP at 125 (emphasis added). In other words, the agreement specifically recognized the wording of the WSU website referenced by Laura and contemplated that "living expenses" are a cost distinct from "room and board." Substantial evidence

supports the commissioner's finding that the WSU-Spokane published costs used by Laura to calculate what Timothy owed was proper.

Timothy's continued refusal to pay, even after he was confronted with the difference between the published costs for WSU-Pullman and WSU-Spokane indicated Timothy's violation of the support order was intentional. Had Timothy believed in good faith that he was not required to pay for the miscellaneous living expenses listed on WSU-Spokane's webpage, he would have still owed additional money. Timothy's claim that his $623.42 payment was an overpayment of the monthly room and board for WSU-Spokane fails to acknowledge that the $623.42 figure purported to cover not only one month of room and board but also books. As previously noted, one-third of the monthly room and board for WSU-Spokane plus $160 for books would have totaled $653.67. Timothy's changing position regarding what he paid and why is indicative of willful disobedience of the child support order. The commissioner's order is affirmed.

## APPELLATE ATTORNEY FEES

Both parties request attorney fees, yet fail to provide legal authority in support of their positions as required by RAP 18.1(b). Nevertheless, the court on its own initiative may award attorney fees to a responding party if it determines an appeal is frivolous. RAP 18.9. "An appeal is considered frivolous when it presents no debatable issues and

is so devoid of merit that there is no possibility of reversal." *Griffin v. Draper*, 32

Wn. App. 611, 616, 649 P.2d 123 (1982).

Looking at the appeal as a whole, we deem Timothy's appeal frivolous.

On issue of notice, there is no indication Timothy misunderstood the nature

of Laura's claim, even if she did not specifically allege he was refusing to pay

"miscellaneous living expenses." Indeed, Laura had no reason to know Timothy was

specifically refusing to pay "miscellaneous living expenses" until he asserted this for the

first time in response to the contempt motion. Thus, the issue of whether Laura

satisfactorily pleaded her motion was not truly debatable and completely devoid of merit.

With respect to the substance of the contempt finding, the CR 2A agreement

clearly stated the parties were to each pay for one-third of Ryan's postsecondary living

expenses if he lived off-campus. The wording of the agreement tracks the language used

on the WSU website and clarifies that "living expenses" are different from "room and

board." Timothy has never advanced a coherent argument before the trial court or on

appeal explaining why he has refused to recognize the housing costs associated with

WSU-Spokane. Nor has he acknowledged that he has underpaid his support obligations

even on his belatedly asserted interpretation of the "miscellaneous living expenses"

provision on the WSU-Spokane website.

No. 37879-9-III
*In re Marriage of O'Rourke*

Timothy's appeal fails to raise reasonably debatable issues. Laura should not bear the burden of paying to defend this appeal. We therefore award attorney fees to Laura under RAP 18.9(a).

CONCLUSION

The contempt order is affirmed. Laura is awarded reasonable attorney fees, subject to compliance with RAP 18.1(d).

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Fearing, J.