201 P.3d 1022 (2008)
Allan PARMELEE, Appellant,
v.
Harold CLARKE, Respondent.
No. 60836-3-I.
Court of Appeals of Washington, Division 1.
November 24, 2008.
Publication Ordered February 23, 2009.
*1024 Michael Charles Kahrs, Kahrs Law Firm PS, Seattle, WA, for Appellant.
Sara J. Olson, Daniel John Judge, Attorney General's Office, Olympia, WA, for Respondent.
BECKER, J.
¶ 1 Appellant Allan Parmelee, a Washington State inmate, sued to penalize the Department of Corrections for not timely responding to his requests for public records. The law permits an agency to designate a person to whom a request for records should be directed. Because Parmelee chose not to submit his requests to the designated person, the trial court properly dismissed his suit.
¶ 2 The first request at issue in Parmelee's suit is a letter he allegedly wrote to Leslie Swanson, a Department of Corrections staff member in the administrative segregation unit at the facility where he was incarcerated. Parmelee says he handed the letter directly to Swanson on February 9, 2005. A handwritten copy of it is attached to his complaint. The letter asks for various documents related to Parmelee's 2005 administrative segregation at the Washington State Reformatory.
¶ 3 The second request, for different documents, was made on February 25, 2005, in a letter Parmelee wrote to Susan Collins, a grievance coordinator at his facility. Collins had rejected two of his grievances, and the primary topic of the letter was Parmelee's response to Collins' rejections. The last paragraph of the three-page letter says, "Additionally, [if necessary, pursuant to the Public Disclosure Act, RCW 42.17] I request a copy of the written job description, duty designations or document(s) that explain and identify what your job duties are and/or involve."
¶ 4 Collins responded to Parmelee by letter dated March 1, 2005. She acknowledged receipt of the letter of February 25 and instructed Parmelee to submit his records request to the facility's public disclosure coordinator:
Lastly, your request for other than ... central file documents should be submitted on DOC form 05-066 to Nancy Watts, Public Disclosure Coordinator at MCC, as indicated in DOC 280.510, Public Disclosure of Records.
Parmelee did not submit a public records request to Nancy Watts.
¶ 5 On March 2, 2005, Parmelee appealed to Kay Wilson-Kirby, a Department appeals officer in Olympia. One topic of his appeal was Nancy Watts' denial of a different, unrelated public disclosure request. A second topic was Collins' letter of March 1 instructing him to submit his public disclosure requests to Nancy Watts. "I also appeal a separate PDA request dated 2-25-05, addressed to Susan Collins at WSR, where she says in her 3-1-05 letter to me I cannot make PDA requests through DOC staff  such as her."
¶ 6 Wilson-Kirby responded to Parmelee's appeal in a letter dated June 15, 2005, stating her conclusion that Parmelee's request of February 25, 2005 had been processed correctly.
¶ 7 Parmelee sued in June 2006. He alleged that the Department recklessly, negligently, and in bad faith violated the Public Records Act by failing to timely respond to and process his request of February 25, 2005, *1025 and by its failure to respond to his March 2, 2005 appeal. He also attached a handwritten copy of the letter he allegedly handed to staff member Leslie Swanson on February 9, 2005, requesting documents related to his administrative segregation. The complaint requested fees and costs, a $100 per day penalty, and an order compelling the Department to respond or provide the requested records.
¶ 8 After the Department received the complaint, Wilson-Kirby wrote a letter dated July 6, 2006 informing Parmelee that the Department had no record of the request he allegedly made in the letter of February 9, 2005. She asked that he identify the documents he wanted so that the request could be processed. In August 2006, Denise Vaughn, a public disclosure specialist with the Department, acknowledged the letter of February 25, 2005 and responded to it by providing a copy of the grievance coordinator's job description. In September 2006, Vaughn wrote acknowledging as "received via appeal process" the letter of February 9, 2005 that was attached to Parmelee's complaint. She provided seven documents in response to his request for records pertaining to his administrative segregation.
¶ 9 The Department moved for summary judgment on the basis that neither the February 9 letter nor the February 25 letter constituted a valid records request. The trial court orally granted the motion after the hearing and signed a final order that was filed on October 11, 2007. Parmelee moved for reconsideration. The trial court denied the motion. Parmelee appeals the summary judgment order and the order denying reconsideration.
¶ 10 The standard of review of an order of summary judgment is de novo, and the appellate court performs the same inquiry as the trial court. Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Genie Industries, Inc. v. Market Transport, Ltd., 138 Wash.App. 694, 700, 158 P.3d 1217 (2007). Additionally, judicial review of challenged agency actions under the Public Records Act is de novo. O'Neill v. City of Shoreline, 145 Wash.App. 913, 187 P.3d 822, 825 (2008). The Public Records Act must be liberally construed. RCW 42.56.030.
¶ 11 Parmelee contends his requests complied with the requirements published by the Department in the Washington Administrative Code (WAC) and deserved timely responses.
¶ 12 The Public Records Act requires that agencies publish, for the benefit of the public, descriptions of their organization including the places at which and the employees from whom public records may be requested:
(1) Each state agency shall separately state and currently publish in the Washington Administrative Code and each local agency shall prominently display and make available for inspection and copying at the central office of such local agency, for guidance of the public:
(a) Descriptions of its central and field organization and the established places at which, the employees from whom, and the methods whereby, the public may obtain information, make submittals or requests, or obtain copies of agency decisions;
(b) Statements of the general course and method by which its operations are channeled and determined, including the nature and requirements of all formal and informal procedures available;
(c) Rules of procedure;
(d) Substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; and
(e) Each amendment or revision to, or repeal of any of the foregoing.
RCW 42.56.040(1).
¶ 13 The Department published WAC 137-08 to ensure its compliance with the Public Records Act. WAC 137-08-010. At the time in question, the regulation provided that requests for any identifiable public record "may be initiated at any office of the department *1026 during normal business hours." Former WAC 137-08-060(1) (1986).
¶ 14 Parmelee points out that the term "office" is undefined. He contends that in the absence of a definition, there was no requirement to submit a records request to a particular person. Essentially, he contends the Department was obligated to respond to every request for public records delivered to any employee. If that is true, he made a valid public records request in the letter he allegedly delivered on February 9, 2005 to staff member Leslie Swanson, and also in the last paragraph of the letter he wrote to grievance coordinator Susan Collins on February 25, 2005.
¶ 15 But the regulation stated that written requests for public records would be handled by the designated public disclosure coordinator in each department. The public disclosure coordinator was responsible "for implementing the department's rules regarding disclosure of public records, coordination of staff in this regard, and generally insuring compliance by the staff with public records disclosure requirements." WAC 137-08-070. Each public disclosure coordinator was charged with responding to "written requests for disclosure of the department's nonexempt public records located in that office." WAC 137-08-080(1). In light of these specific provisions for designation of public disclosure coordinators, it would be absurd to construe the term "office" to mean every employee of the Department. The Department has numerous offices and institutions located throughout the state. It is more reasonable to read the regulation as requiring that requests be submitted to the person designated at each of the Department's locations to be responsible for responding to requests initiated at that location.
¶ 16 The Department also adopted an unpublished policy providing more particulars about how to request public records:
A. All requests for public records shall be made in writing, which includes FAX, electronic mail, or DOC 05-066 Request for Disclosure of Records to the designated PDC. The request shall include the following information:
1. Name and return address of the person requesting the record;
2. The date of the request;
3. The specific documents requested; and
4. Whether those specific public records have previously been or are currently being requested from the Department by the requestor, and if so, when and to whom the request was submitted.
B. Offender requests for copies of public records, other than their central file, shall be made in writing to the PDC at the facility where they are incarcerated or the region in which they are supervised. Offenders should complete DOC 05-066 Request for Disclosure Records.
C. An offender may request to inspect his/her central file by completing and submitting DOC 05-066 Request for Disclosure Records to the facility/local Records Unit. The review will be accomplished in the presence of a designated staff in a timely manner.
D. Incarcerated offender requests to examine or obtain a copy of information in his/her health record shall be handled per DOC 640.020 Offender Health Record Management.
Department of Corrections Policy 280.150(II)(A) & (B).
¶ 17 Parmelee contends that the Department improperly used the unpublished policy directive to subject him to requirements for submitting requests for records that were not published in the WAC as required by the statute. For example, Parmelee says his request was turned down because it was not submitted on the form (DOC 05-066) which is mentioned in DOC Policy 280.510 but not in the WAC. But the policy does not mandate the use of a particular form and the Department does not rely on Parmelee's non-use of the form as the reason for not processing his request.
¶ 18 The unpublished policy states that requests for public records should be made to the designated public disclosure coordinator. Parmelee contends he was denied access to records because the requirement that *1027 requests be made to a particular individual is found only in the unpublished policy, in violation of the statute. The Act provides that if the agency fails to comply with the statutory mandate to publish in the WAC its procedural requirements for requesting records, members of the public may not be penalized for failing to resort to those procedures:
Except to the extent that he has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published or displayed and not so published or displayed.
RCW 42.56.040(2).
¶ 19 Here, the Department's published regulation complied with the statutory mandate by notifying the public that "the employees from whom" the public may obtain information from the DOC are the public disclosure coordinators in each department. The more detailed policy directive, also publicly available although not published as part of the WAC, explains more precisely the procedures to be followed when requesting public records. It is not illegal for an agency to have a policy directive that is not published as part of the WAC so long as there is a published regulation complying with the informational requirements of RCW 42.56.040. In fact, the statute authorizes agencies to "adopt and enforce reasonable rules and regulations... to provide full public access to public records, to protect public records from damage or disorganization, and to prevent excessive interference with other essential functions of the agency." RCW 42.56.100. DOC Policy 280.510 serves these purposes. Promulgated by the secretary of the Department of Corrections, it addresses the unique situation of inmates by exempting them from the obligation to submit a formal public records request if they merely want to inspect their own central file or health records.
¶ 20 Not only was the published WAC regulation sufficient to put the public on notice that a records request should be submitted to a designated public disclosure coordinator, Parmelee also had actual notice. The statutory requirement barring an agency from requiring a person to resort to unpublished procedures has an exception for actual notice: "Except to the extent that he has actual and timely notice of the terms thereof...." RCW 42.56.040(2). Parmelee was informed by letter from Susan Collins dated March 1, 2005 that he should submit his request to Nancy Watts, in accord with DOC Policy 280.510. He did not send his request to her. Instead, he challenged the requirement that he should do so.
¶ 21 Parmelee asserts that DOC 280.510 unlawfully distinguishes between inmates and non-inmates. The Public Records Act prohibits agencies from distinguishing among persons requesting records. RCW 42.56.080. The requirement that public records requests be submitted to the designated public disclosure coordinator does not distinguish among persons because it applies to all persons seeking public records, including inmates. The policy, DOC 280.510, does make a distinction in that it provides a way for inmates to gain access to certain personal records without having to initiate a public records request. This sort of distinction does not violate the statute because it facilitates access rather than obstructing it.
¶ 22 Parmelee argues that the Department should be equitably estopped from asserting that he had to submit his requests to the designated public disclosure coordinator. In the trial court, he attempted to show that the Department has been inconsistent and has sometimes responded to public records requests that were not submitted to a designated public disclosure coordinator. For example, he submitted the deposition testimony of a staff member to establish that any employee of the agency could be the recipient of a request for public records. And he declared "I have provided PRA requests to various DOC employees in the past and they have accepted these requests and forwarded them to the PDCs for response." On appeal, he contends he detrimentally relied on his prior experience of successfully submitting requests to various personnel who were not designated to receive them.
¶ 23 The elements of equitable estoppel are (1) an admission, statement or act inconsistent with a claim afterwards asserted, (2) action by another in reliance upon *1028 that act, statement or admission, and (3) injury to the relying party from allowing the first party to contradict or repudiate the prior act, statement or admission. Board of Regents v. City of Seattle, 108 Wash.2d 545, 551, 741 P.2d 11 (1987).
¶ 24 The deposition in question occurred in February 2007, after the two records requests of February 2005. So in sending his letters to someone other than the designated public disclosure coordinator, Parmelee could not have been relying upon the staff member's deposition testimony. Furthermore, even if an agency has on occasion processed a request directed to the wrong person, it would be unreasonable to rely on such an event as a promise by the agency to abandon its rule in all future cases. Finally, the record is clear that Parmelee knew that Nancy Watts was the designated public disclosure coordinator at his institution. On this record, Parmelee's reliance was not justified and equitable estoppel does not apply.
¶ 25 Parmelee moved for reconsideration of the order of summary judgment. The Department contends the motion was untimely because it did not comply with the 10-day service requirement of Snohomish County Local Court Rule 59(e)(3)(A). But the 10-day service requirement has been removed from the analogous state rule, CR 59. Because the local rule is inconsistent with the state rule in this respect, Parmelee's motion for reconsideration was not untimely. But on the merits, the motion for reconsideration did not satisfy CR 59(a)(4), and the trial court properly denied it on that basis.
¶ 26 Reconsideration is available when there is "newly discovered evidence, material for the party making the application, which he could not with reasonable diligence have discovered and produced at the trial." CR 59(a)(4). To show that the Department was sometimes promptly responding to records requests that were submitted to someone other than the designated public disclosure coordinator, Parmelee offered copies of new records requests he submitted to various employees of the Department in 2007 after the trial court dismissed this lawsuit on summary judgment. The additional evidence was not "material" because it bore no relationship to what Parmelee understood the Department policy to be in February 2005. Moreover, evidence of the Department's alleged inconsistency was already in the record considered by the trial court; the additional submissions did not materially strengthen the argument. The trial court did not err when it denied the motion for reconsideration.
¶ 27 In summary, because the two record requests at issue were not submitted to the designated public disclosure coordinator, the Department may not be penalized for failing to respond to them in a timely fashion.
¶ 28 Parmelee's request for fees under RCW 42.56.550(4) is denied as he is not the prevailing party.
¶ 29 Affirmed.
WE CONCUR: ELLINGTON and COX, JJ.