IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| KEVIN ANDERSON, | ) | No. 33191-1-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DEPARTMENT OF CORRECTIONS, | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, A.C.J. — Inmate Kevin Anderson brought suit against the

Department of Corrections (DOC) seeking penalties and attorney fees under the Public

Records Act (PRA), chapter 42.56 RCW. Mr. Anderson alleged the DOC wrongfully

withheld certain documents when he viewed his inmate central file. The trial court

granted the DOC's motion for summary judgment and dismissed Mr. Anderson's claims.

On appeal, Mr. Anderson asserts various arguments that the trial court erred. We

disagree and affirm the trial court.

No. 33191-1-III
*Anderson v. Dep't of Corr.*

## FACTS

Mr. Anderson was housed at the Airway Heights Corrections Center (AHCC) from February 2011 until he was transferred to the Coyote Ridge Corrections Center (CRCC) in February 2013. While at AHCC, Mr. Anderson reviewed documents contained in his inmate central file on February 9, 2012, May 31, 2012, and August 14, 2012.

The DOC creates a central file for every inmate who enters its custody. The central file follows the inmate to the current DOC facility where the inmate is housed. According to the DOC, an inmate's central file is not static—documents may be added to or removed from a central file during the course of the incarceration based on DOC records management guidelines.

DOC Policy 280.510 governs the public disclosure of records to inmates. In relevant part, DOC Policy 280.510 provides:

A.  All public records requests, other than requests by incarcerated offenders for inspection of their central file or health record, must be submitted in writing to the Department of Corrections Public Records Office [by regular mail or e-mail] . . . .

. . . .

B.  . . . An offender may request to inspect his/her central file by completing and submitting DOC 05-066 Request for Disclosure of Records to the facility/local Records Unit.

C.  Requests from an incarcerated offender to examine or obtain a copy of information in his/her health record will be handled per DOC 640.020 Offender Health Records Management.

2

Clerk's Papers (CP) at 67.

Inmates often send a "kite" (an internal prison correspondence) to the records unit of their DOC facility to view their central files. The DOC then assigns each central file review request a distinct tracking number and requires the inmate to submit an official records request form. If an inmate requests to review his central file multiple times, the DOC treats each request as a separate public disclosure request in its system. If the DOC withholds or redacts documents contained in an inmate's central file, at the time of the inmate's central file review, the DOC provides the inmate with an exemption log that explains the basis for its decision to withhold or redact. An inmate may appeal the DOC's exemption claim internally within the DOC. Consistent with DOC Policy 280.510, if an inmate requests a document outside his or her central file or medical file, the DOC requires the inmate to submit a public records request to the DOC public records office in Olympia.

On January 4, 2012, Mr. Anderson submitted a kite to the AHCC records unit requesting to review his central file. The DOC assigned the request the tracking number 12-007. Mr. Anderson reviewed his central file on February 9, 2012. Concurrent with his central file review, the DOC notified Mr. Anderson, in an exemption log, of its statutory basis for withholding two documents—his Federal Bureau of Investigations

3

(FBI) rap sheet and his Washington State Patrol (WSP) rap sheet. A few weeks later, Mr. Anderson notified the DOC that he believed his central file was missing documents. The DOC responded that his central file review, along with the exemption log, contained or identified all the documents AHCC received from the Washington Corrections Center (WCC) upon his arrival.

In March 2012, Mr. Anderson filed an appeal with the DOC public disclosure appeals office in Olympia. The grounds of Mr. Anderson's DOC appeal included the withholding of his rap sheets, and an assertion of documents missing from his central file. On March 30, 2012, the DOC public disclosure appeals office notified Mr. Anderson that "[t]he decision to withhold both Rap Sheets was appropriate when it was made," although that policy had since changed and he could submit a new central file review request. CP at 296.

Sometime in April 2012, the DOC learned that a portion of Mr. Anderson's central file from his previous incarceration had not been forwarded to AHCC. On May 15, 2012, the DOC public disclosure appeals office notified Mr. Anderson that some of the records that should have been in his central file were still in WCC during his February 9, 2012 central file review, and therefore "[f]acility records staff will prepare the first volume of your central file for inspection and schedule your review." CP at 205.

On May 22, 2012, the AHCC records unit informed Mr. Anderson that it had received the missing volume of his central file and was assigning his review of the documents a new tracking number, 12-107. Mr. Anderson protested the new tracking number as he considered the missing volume of his central file part of his January request. On May 31, 2012, Mr. Anderson reviewed the missing volume of his central file and was provided another exemption log. Because Mr. Anderson only reviewed documents sent from WCC, he did not review his rap sheets, nor did the DOC attempt to claim an exemption for his rap sheets.

On July 24, 2012, Mr. Anderson submitted another kite to the AHCC records unit to review his central file. The DOC assigned the request the tracking number, 12-173. Prior to Mr. Anderson's upcoming central file review, the DOC reviewed his central file and merged the missing volume that had previously been at WCC. During this time, the DOC claims it realized that Mr. Anderson's central file contained documents that should have been in Mr. Anderson's medical file. Consequently, the DOC removed seven records from Mr. Anderson's central file and sent them to his medical file on August 8, 2012.

Mr. Anderson reviewed his central file on August 14, 2012. During the central file review, Mr. Anderson was given an exemption log (dated August 8, 2012), which listed

5

seven medical records as being withheld in their entirety. The medical records included a special sex offender sentencing alternative (SSOSA) assessment and chemical dependency documents.[1] On the exemption log, the withheld medical records had a double asterisk next to them, and the bottom of the log stated:

> **ABOVE ORIGINAL DOCUMENTS REMOVED FROM CENTRAL FILE AND SENT TO MEDICAL ON 8/8/2012. IF YOU WOULD LIKE TO REVIEW ANY OF THESE PARTICULAR DOCUMENTS, PLEASE SEND AN INMATE KITE TO MEDICAL.

CP at 151. The exemption log also stated that the "MEDICAL/MENTAL HEALTH/CHEMICAL DEPENDENCY" exemption applied to the medical records pursuant to RCW 70.02.020(1), RCW 42.56.360(2), 42 CFR, RCW 70.96A.150(1)(3), and RCW 42.56.070(1). CP at 153.

Mr. Anderson was transferred to CRCC in February 2013. On May 21, 2013, Mr. Anderson deposited a summons and complaint in the internal mail system of CRCC and requested a postage transfer. On June 4, 2013, Franklin County filed Mr. Anderson's summons and complaint. Mr. Anderson's complaint alleged the DOC violated the PRA

---

[1] Mr. Anderson's rap sheets were not listed on the exemption log. During oral argument, we asked Mr. Anderson whether the rap sheets were produced by the DOC in the August 14, 2012 review. Mr. Anderson admitted that the rap sheets were likely produced by the DOC in that review of his central file. Wash. Court of Appeals, *Anderson v. Dep't of Corr.*, No. 33191-1-III, oral argument (Jan. 27, 2016) at 7 min., 50 sec. (on file with court).

by withholding four specific records during his central file reviews—(1) the central file index, (2) certified polygraph associates documents, (3) a SSOSA assessment, and (4) chemical dependency documents. The complaint also alleged that the "DOC is liable for violating the PRA by removing requested records from Mr. Anderson's central file after he made his Aug 8, 2012 request and before DOC produced his file for review." CP at 327.

On December 5, 2014, the parties filed competing summary judgment motions. The DOC's brief addressed the four withheld PRA records explicitly mentioned in Mr. Anderson's complaint, argued that the statute of limitations barred most of Mr. Anderson's claims, and claimed the SSOSA assessment and chemical dependency documents were not withheld from Mr. Anderson. Mr. Anderson's motion for summary judgment argued that he was entitled to bad faith PRA penalties as the DOC withheld multiple records from him, including the rap sheets and the records it sent to his medical file. On February 2, 2015, the DOC replied to Mr. Anderson's motion for summary judgment, and objected to Mr. Anderson expanding the issues beyond his complaint to include a claim for wrongful withholding of his rap sheets.

On February 13, 2015, the trial court denied Mr. Anderson's motion for summary

judgment, and granted the DOC's motion for summary judgment. Specifically, the trial

court held:

> 2. Plaintiff's claims related to his February 9, 2012 central file review is [sic] barred by RCW 42.56.550(6)'s one-year statute of limitations;
> 3. Plaintiff's claims related to his May 31, 2012 document review is [sic] barred by RCW 42.56.550(6)'s one-year statute of limitations;
> 4. Defendant Department of Corrections did not violate the Public Records Act during Plaintiff's August 14, 2012 central file review;
> 5. Plaintiff raises new claims in his summary judgment motion and those claims are outside the scope of Plaintiff's complaint and are excluded from consideration by this Court.

CP at 11. Mr. Anderson timely appealed.

Mr. Anderson argues the trial court erred (1) by not construing his complaint as

encompassing a claim for wrongful withholding of his rap sheets, (2) by ruling that his

claim for wrongful withholding of his rap sheets was barred by the PRA's one-year

statute of limitations, (3) by striking various portions of his summary judgment

submissions, (4) by concluding the DOC did not violate the PRA by withholding his rap

sheets, his SSOSA assessment, and various medical records, and (5) by dismissing his

claim seeking penalties and attorney fees under the PRA.

## ANALYSIS

This court reviews agency actions under the PRA and summary judgment orders

de novo. *See Greenhalgh v. Dep't of Corr.*, 160 Wn. App. 706, 713-14, 248 P.3d 150

(2011); *see also Neigh. All. of Spokane County v. Spokane County*, 172 Wn.2d 702, 715,

261 P.3d 119 (2011). Summary judgment is proper if no genuine issue of material fact

remains, and the moving party is entitled to judgment as a matter of law.

CR 56(c). Further, summary judgment is warranted "only if reasonable people could

reach one conclusion based on the evidence when viewing the facts in the light most

favorable to the nonmoving party." *O.S.T. v. Regence BlueShield*, 181 Wn.2d 691, 703,

335 P.3d 416 (2014).

A. *Whether Mr. Anderson's complaint sufficiently alleged that DOC wrongfully withheld his rap sheets*

Mr. Anderson first argues that the trial court erred in construing his complaint as

not alleging the DOC wrongfully withheld his rap sheets. "Washington follows notice

pleading rules and simply requires a 'concise statement of the claim and the relief

sought.'" *Champagne v. Thurston County*, 163 Wn.2d 69, 84, 178 P.3d 936 (2008)

(quoting *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 352, 144 P.3d

276 (2006)); *see* CR 8(a). A complaint must "'apprise the defendant of the nature of the

plaintiff's claims and the legal grounds upon which the claims rest.'" *Kirby v. City of*

9

*Tacoma,* 124 Wn. App. 454, 469-70, 98 P.3d 827 (2004) (quoting *Molloy v. City of Bellevue,* 71 Wn. App. 382, 385, 859 P.2d 613 (1993)). "While inexpert pleadings may survive a summary judgment motion, insufficient pleadings cannot." *Pac. Nw. Shooting Park Ass'n,* 158 Wn.2d at 352. "'A pleading is insufficient when it does not give the opposing party fair notice of what the claim is and the ground upon which it rests.'" *Dewey v. Tacoma Sch. Dist. No. 10,* 95 Wn. App. 18, 23, 974 P.2d 847 (1999) (quoting *Lewis v. Bell,* 45 Wn. App. 192, 197, 724 P.2d 425 (1986)).

Mr. Anderson argues that the discovery process gave the DOC notice of his PRA claims. Specifically, he claims that *his* interrogatory questions and *his* deposition questions referred to his rap sheets. In Washington, the "notice pleading rule contemplates that discovery will provide parties with the opportunity to learn more detailed information about the nature of a complaint." *Bryant v. Joseph Tree, Inc.,* 119 Wn.2d 210, 222, 829 P.2d 1099 (1992). Further, "'initial pleadings which may be unclear may be clarified during the course of summary judgment proceedings.'" *Evergreen Moneysource Mortg. Co. v. Shannon,* 167 Wn. App. 242, 257, 274 P.3d 375 (2012) (quoting *State v. Adams,* 107 Wn.2d 611, 620, 732 P.2d 149 (1987)). However, claims can be clarified through discovery only if the original claim is unclear, not if the "claim is simply not made." *Id.*

Mr. Anderson's argument is hobbled by his own tacit admissions prior to summary judgment that the rap sheets withholding claim was not encompassed within his complaint. Three times before summary judgment, Mr. Anderson filed a motion requesting permission from the trial court to add a claim that the DOC wrongfully withheld his rap sheets. Each time the trial court denied his motions to amend. Mr. Anderson has not assigned error to these discretionary rulings.

This is not a situation where discovery was required to clarify the complaint. The complaint was clear. Mr. Anderson did not allege in his complaint that the DOC wrongfully withheld his rap sheets. He probably did not raise this issue because the DOC produced his rap sheets during his August 14, 2012 central file review. Because Mr. Anderson's complaint never alleged wrongful withholding of his rap sheets, we need not address Mr. Anderson's second argument that he brought this claim within the PRA's one-year statute of limitations.

B.     *Whether the trial court erred in striking portions of Mr. Anderson's summary judgment submissions*

Mr. Anderson argues that the trial court erred when it struck some of his summary judgment submissions. During oral argument, we asked Mr. Anderson to identify which of his stricken submissions raised genuine issues of material fact. Wash. Court of Appeals, *Anderson v. Dep't of Corr.*, No. 33191-1-III, oral argument (Jan. 27, 2016) at 8

11

min., 40 sec. (on file with court). Mr. Anderson admitted that most of his stricken submissions were duplicated by the DOC in its submissions. *Id.* at 9 min., 15 sec. He identified the documents contained in pages 218-220 of the clerk's papers as the only stricken documents that were not duplicated by the DOC's submissions. *Id.* at 11 min., 30 sec. He conceded that nothing in those documents raised genuine issues of material fact. *Id.* at 12 min., 5 sec. Because Mr. Anderson concedes that any error by the trial court in striking some of his submissions is harmless error, we decline to review his third argument. *See State v. Lewis*, 156 Wn. App. 230, 238 n.4, 233 P.3d 891 (2010).

C.      *Whether the DOC wrongfully withheld Mr. Anderson's SSOSA assessment and chemical dependency reports*

Mr. Anderson's fourth argument is that the DOC violated the PRA when it removed his SSOSA assessment and his chemical dependency reports from his central file and placed those records in his medical file. Mr. Anderson argues, "[t]he records were present in [my] central file when [I] requested them . . . [and] [a]n agency is required to disclose all public records responsive to a request unless it falls within an enumerated exception." Br. of Appellant at 19.

The DOC has a two-fold response. The DOC first responds that the records are private health care records as defined by chapter 70.02 RCW and not subject to disclosure under the PRA. The DOC further responds that it did not withhold the documents, but

instead made the documents available to Mr. Anderson conditioned on him making a proper request for his medical records.

The parties have not adequately briefed whether Mr. Anderson's SSOSA assessment and his chemical evaluation reports are health care records under chapter 70.02 RCW. We therefore decline to address this issue. *See Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration."). Rather, for the purpose of our review, we will assume that the assessment and the reports were not health care records and were required to be produced under the PRA. We therefore address the DOC's second response, and inquire whether the records were "withheld," within the meaning of the PRA.

In *Sanders v. State*, 169 Wn.2d 827, 836, 240 P.3d 120 (2010), the court defined various technical terms to assist in determining whether a violation of the PRA had occurred:

> 1. Records are either "disclosed" or "not disclosed." A record is disclosed if its existence is revealed to the requester in response to a PRA request, regardless of whether it is produced.
> 2. Disclosed records are either "produced" (made available for inspection and copying) or "withheld" (not produced). A document may be lawfully withheld if it is "exempt" under one of the PRA's enumerated exemptions. A document not covered by one of the exemptions is, by

13

contrast, "nonexempt." Withholding a nonexempt document is "wrongful withholding" and violates the PRA.

Prior to Mr. Anderson's August 14, 2012 central file review, the DOC moved seven records from his central file to his medical file. Although the exemption log provided to Mr. Anderson identified the seven documents as being withheld, it also clearly stated:

> **ABOVE ORIGINAL DOCUMENTS REMOVED FROM CENTRAL FILE AND SENT TO MEDICAL ON 8/8/2012. *IF YOU WOULD LIKE TO REVIEW ANY OF THESE PARTICULAR DOCUMENTS, PLEASE SEND AN INMATE KITE TO MEDICAL.***

CP at 151 (emphasis added). Construed properly, the DOC's response did not attempt to exempt the seven documents from disclosure. Rather, the DOC made the records available to Mr. Anderson for copying and inspection conditioned only on him "SEND[ING] AN INMATE KITE TO MEDICAL." CP at 151. Because the records were available to Mr. Anderson for copying and inspection, they were produced rather than withheld. *See Parmelee v. Clarke*, 148 Wn. App. 748, 751, 201 P.3d 1022 (2008) ("The [PRA] permits an agency to designate a person to whom a request for records should be directed."). For this reason, Mr. Anderson cannot establish a PRA violation.

14

No. 33191-1-III
*Anderson v. Dep't of Corr.*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, A.C.J.

WE CONCUR:

Siddoway, J.                    Korsmo, J.

15